NEPCO UNIT OF LOCAL 95, OFFICE EMPLOYES INTERNATIONAL UNION, AFL–CIO, Appellant,

v.

NEKOOSA–EDWARDS PAPER COMPANY, Appellee.

No. 13173.

United States Court of Appeals
Seventh Circuit.

Feb. 28, 1961.

Joseph E. Finley, Rudd, Ober, Finley & Miller, Cleveland, Ohio, for appellant.

Lloyd L. Chambers, Wisconsin Rapids, Wis., LeRoy W. Sigler, Atty., Port Ed-

wards, Wis., Chambers & Nash, Wisconsin Rapids, Wis., for appellee.

Before KNOCH and CASTLE, Circuit Judges, and MERCER, District Judge.

MERCER, District Judge.

Plaintiff, Local 95, filed a complaint to compel defendant to arbitrate an alleged grievance asserted by Joseph G. Stanke, one of defendant's employees.[1] After defendant had answered the complaint, each party filed a motion for summary judgment. Plaintiff's motion was denied and judgment was entered upon defendant's motion dismissing the complaint. This appeal followed.

Plaintiff is the bargaining agent for certain of defendant's employees, including Stanke. When this dispute arose, employment relations between defendant and the bargaining unit represented by plaintiff were governed by a collective bargaining agreement dated June 1, 1958. Pertinent provisions of that agreement are summarized in the paragraph which follows, with footnote references to the full text thereof.

Section 3 provided for no strikes and no lockouts during the effective term of the agreement.[2] Subsection e of Section 6, relating to seniority, provided, *inter alia*, that no employee should be promoted or transferred upon a seniority basis unless he is capable of performing the work required for the job by standards set by the employer.[3] Section 7 governed promotions, demotions and transfers of employees.[4] Subsection g there-

1. Jurisdiction is based upon the provisions of Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a).

2. Section 3. *Interruption of Work.*

The union agrees that there shall be no authorized strikes or other interruptions of work while this agreement remains in effect, and the employer agrees that there shall be no lockouts or similar shutdowns while this agreement remains in effect.

3. Section 6. *Seniority.*
 \*  \*  \*  \*  \*

e. It is understood that the subsequent provisions relative to promotions, transfers, layoffs and recalls are subject to the limitation that no employee shall be promoted, transferred, retained or rehired by reason of the application of the principle of seniority unless he is capable of doing the work required by the employer in accordance with its established standards for the position.

4. Section 7. *Promotions, Demotions and Transfers.*

a. In the filling of vacancies which may occur in any of the positions covered by this agreement, the employer will, to the extent that it may be practicable and consistent with the efficient performance of the duties of the position, advance or transfer employees who are qualified to perform the duties of the position. If two (2) or more employees have equal qualifications, the employee having the longer term of service shall be given preference.

b. It is the intention of the employer to fill job vacancies from within the company before hiring new employees provided employees are available with the necessary qualifications to fill the vacant positions.

c. Employees assigned to work in a higher or lower classification as part of their training, or to fill a temporary vacancy of not more than thirty (30) days at one time, or in an emergency, shall perform such work without change in pay.

d. Employees promoted to a higher classification will serve a probationary period of ninety (90) days. During this probationary period, if the company does not feel that said employee will be able to qualify for the work, or if the employee decides he does not want the promotion, he shall be returned to his former position without loss of seniority or pay. Irrespective of the probationary period, if the employee qualifies for the new position, he shall be paid the rate of the classification to which he has been promoted as soon as he establishes his qualifications.

e. Employees demoted to a lower classification shall receive the rate of the classification they are demoted to.

f. Employees temporarily assigned as relief for salaried supervisors shall receive an adjustment in pay of ten cents (10¢) per hour for each complete day of relief.

g. Job Posting.

1. Notice of vacancies on jobs covered by this agreement shall be posted on the company bulletin boards for a period of three (3) working days.

of, which has specific application to this dispute, establishes the procedure for filling job vacancies. That subsection required that notice of any vacancy on jobs covered by the agreement should be posted upon the company bulletin board to permit any employee "who feels he has the necessary qualifications" to apply for the posted job, and contained a provision for a "grievance" by any employee dissatisfied with "the final selection." [5] Section 10 established a method for handling grievances, first through negotiations between the employee involved and plaintiff's agents, on the one hand, with representatives of defendant on the other, and, ultimately, if negotiations failed, through submission of the grievance to arbitration.[6]

The dispute involved here arose within the framework of Section 7g. Defendant posted a notice of a job vacancy in the classification of Relief Cost Clerk, a job covered by the agreement. Stanke was one of 16 persons who applied for the job. His written application for the job was presented in the time and manner prescribed by Section 7–g–3 of the agreement. Another of the applicants, an employee outside the bargaining unit represented by plaintiff, was awarded the job.

Stanke then filed a signed statement with the company which was in words and figures as follows: "Position 97–1 Relief Cost Clerk-Posting has been filled by an employee outside the unit. Joseph

---

2. Notice will include the job title, department, job evaluation rate, and a brief description of duties. Additional information may be obtained from the Employment Director.

3. Any employee, whether or not he holds a job covered by this agreement, who feels he has the necessary qualifications, may make application in writing to the Employment Director during this three (3) day period.

4. Only those employees who make such application within the three (3) day period will be permitted to present a grievance against the final selection.

5. The employer reserves the right to notify, interview and consider any employee it feels has the necessary qualifications regardless of filing formal application.

5. Subsection 7–g–4, footnote 4, *supra.*

6. Section 10. *Method of Handling Grievances.*

A grievance committee shall be formed to represent the employees, and the union shall notify the employer of the names of these committeemen.

The following steps shall be followed in the handling of grievances:

*Step One:* The employee either alone or accompanied by his steward, if he so desires, shall present his grievance to his immediate supervisor. If the employee presents his grievance alone, his steward shall promptly be notified of the results.

*Step Two:* If the grievance is not satisfactorily settled within three (3) working days thereafter, it shall be submitted in writing for the consideration of the steward and the department head.

*Step Three:* If the grievance is not satisfactorily settled within ten (10) working days thereafter, it shall be submitted in writing and considered by the grievance committee and authorized members of management.

*Step Four:* If the grievance is not satisfactorily settled within ten (10) working days thereafter, it shall be considered by the general management of the employer and the international representative of the union.

*Step Five:* If the grievance is not satisfactorily settled within fifteen (15) working days thereafter, it shall be submitted to an arbitration board which shall be selected as follows:

1. The employer will select a representative within ten (10) days of the termination of grievance procedure.

2. The union will select a representative within the same time limit.

3. The two (2) arbitrators thus selected shall select an impartial arbitrator within ten (10) days.

4. If an impartial arbitrator is not agreed upon as stated above, he shall be selected from a list of five (5) arbitrators supplied by the Judge of the Circuit Court of the Seventh Judicial District of the State of Wisconsin.

The function of the arbitration board shall be to interpret and apply this agreement and this board shall have no power to add, subtract, amend, modify or extend any of the terms of this agreement or to establish or change any rates of pay, wages or hours of work. The expense of arbitration shall be borne equally by the parties hereto.

Stanke believes he has the necessary qualifications for this job. He has been in the office union for 14 months and has 5½ years experience in the finishing room." Upon receipt of that statement, defendant conferred with Stanke and representatives of the plaintiff with respect to Stanke's claim of entitlement by reason of seniority to the job vacancy through and including procedures established by *Step Four* of Section 10 of the agreement.[7] Having exhausted such preliminary procedures without resolving the dispute, plaintiff demanded that Stanke's claim be submitted to a board of arbitration selected in accordance with the provisions of *Step Five* of Section 10.[7] Defendant refused that demand, taking the position that Stanke's claim was not an arbitrable grievance within the meaning of the provisions of the latter section. This suit was then instituted.

In entering judgment dismissing the complaint, the lower court concluded that Stanke's claim was not an arbitrable grievance subject to the provisions of Section 10 of the agreement. The court reasoned that subsections 6e,[8] 7a and 7b [9] made the selection of an employee to fill a job vacancy a matter for defendant's sole judgment and discretion which could not be challenged or questioned under the provisions of the contract.

██ Disposition of the case is governed by principles pronounced by the Supreme Court in United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1432, and United Steelworkers of America v. Warrior & Gulf Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409. The congressional policy found in the Labor Management Relations Act favoring the use of arbitration as a means to the achievement of industrial peace requires that arbitration clauses in labor agreements be given the most liberal construction which is compatible with the intent of the parties as therein expressed.

United Steelworkers v. Warrior & Gulf Co., supra, 363 U.S. at pages 577–578, 80 S.Ct. 1347; cf., Textile Workers v. Lincoln Mills, 353 U.S. 448, 450, 453–457, 77 S.Ct. 912, 1 L.Ed.2d 972. When the parties to a collective bargaining agreement have therein agreed to submit disputes as to the proper interpretation and application of the agreement to arbitration, and one party applies to a court for a judgment to compel the other to honor the arbitration clause, the court may not consider the merits of the dispute. The only function of the court is. to ascertain "whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator." United Steelworkers v. American Mfg. Co., supra, 363 U.S. at page 568, 80 S.Ct. at page 1346; to same effect, United Steelworkers v. Warrior & Gulf Co., supra, 363 U.S. at page 583, 80 S.Ct. 1347.

██ Under those principles the issue which is decisive of this appeal is the question whether the court below correctly determined that the Stanke dispute was not an arbitrable grievance within the meaning of the provisions of the controlling collective bargaining agreement. Directing our attention to that narrow issue, we conclude that the court erred in entering judgment in favor of the defendant.

While subsections 6e, 7a and 7b of the agreement would seem to vest complete discretion and authority in defendant, as employer, to determine all questions of qualifications of applicants competing for the same job, the import of those subsections is tempered by the provision of subsection 7–g–4 that only employees who process job applications within the time provided by 7–g–3 "will be permitted to present a *grievance* against the final selection."[10] (Italics supplied).

---

7. See footnote 6, *supra*.

8. See footnote 3, *supra*.

9. See footnote 4, *supra*.

10. Subsection 7–g–4, footnote 4, *supra*.

Defendant suggests that the latter clause, though inconsistent with 6e, 7a and 7b, should now be ignored because it is a minor clause of limitation whereas the provisions of 6e, 7a and 7b are basic reservations of right to defendant. That argument merely points up a patent ambiguity which may be resolved only by interpretation of the agreement as a whole.

We express no opinion as to the proper interpretation of 7–g–4 with subsections 6e, 7a and 7b when considered together. That issue is a question of interpretation of the agreement which is within the scope of the power expressly granted by the agreement to the arbitration board, and therefore, not a function of the courts. United Steelworkers v. American Mfg. Co., supra, 363 U.S. at page 568, 80 S.Ct. 1343.

The provision of subsection 7–g–4 of the contract, though ambiguous when compared with other provisions of the same document, must nevertheless be given effect for present purposes. The provisions of that subsection cannot be construed other than contemplating that a complaint may be processed by any employee who is discontent with the rejection of his transfer application and who feel that he has the qualifications and seniority which would entitle him to placement in the requested job. The agreement employs the term "grievance" generically and without qualification in both subsection 7–g–4 and Section 10. Since the terms are used in both instances without any qualification, we conclude that a "grievance" of the type mentioned in 7–g–4 is an arbitrable "grievance" within the meaning of the provisions of Section 10 of the agreement. In any event, we cannot say "with positive assurance that the arbitration clause" here in issue "is not susceptible of an interpretation" which covers any complaint or grievance asserted pursuant to subsection 7–g–4. United Steelworkers v. Warrior & Gulf Co., supra, 363 U.S. at pages 582–583, 80 S.Ct. 1347.

We are cognizant of the factual distinction which does exist, as defendant claims, between the case at bar and the American and Warrior cases, but that distinction does not affect the general applicability of the definitive principles announced in those cases to all labor-arbitration litigation.

We reject defendant's contention that no contract violation was charged by the statement presented by Stanke. Stanke's statement, in essence, stated that the job vacancy was filled by an employee outside the bargaining unit, that Stanke believed that he had the necessary qualifications for the job and that Stanke had been in the office union for 14 months. We agree that the statement omits the niceties of precision which would be required in a pleading to state a claim of contract violation, but we think the statement sufficiently advised defendant that Stanke was asserting a claim of equal qualifications with, and seniority over, the employee to whom defendant had given the job. Indeed, it appears that defendant negotiated Stanke's claim upon that basis with him and with officials of plaintiff union through the first four steps provided by Section 10. It first challenged the statement as a proper statement of a grievance when those steps failed and the arbitration demand was received.

For the reasons hereinabove stated, the judgment is reversed and the cause is remanded to the District Court with directions to enter judgment against defendant for the relief prayed in the complaint.