**LOCAL UNION NO. 51, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Plaintiff-Appellee,**

v.

**ILLINOIS POWER COMPANY, a corporation, Defendant-Appellant.**

**No. 15227.**

United States Court of Appeals Seventh Circuit.

March 14, 1966.

Rehearing Denied April 12, 1966 (en banc).

Stuart Bernstein, Chicago, Ill., for appellant.

Charles A. Werner, St. Louis, Mo., for appellee.

Before DUFFY and KILEY, Circuit Judges, and MAJOR, Senior Circuit Judge.

DUFFY, Circuit Judge.

Local Union No. 51, IBEW (Union) brought this suit in the District Court under Section 301, Labor Management Relations Act, 29 U.S.C. § 185, seeking a decree ordering Illinois Power Company to perform its obligations under Articles II and IV of the Collective Bargaining Agreement between the parties. Articles II and IV set forth a grievance-arbitration procedure.

On April 17, 1965, the District Court filed its opinion and on May 3, 1965, entered its order granting the Union's motion for a summary judgment, dismissing the Company's motion and directing the Company to accept and process the grievance, and to proceed with arbitration.

The Union's grievance alleged the Company had reclassified hourly-paid employees within the bargaining unit to supervisory employees outside the unit; that these newly classified supervisors continued to spend part of their time doing bargaining unit work which they previously had done as hourly-paid employees.

The grievance alleged that "the daily performance and continued performance by the control room supervisors of work regularly performed by employees of the bargaining unit constitutes an ever-continuing violation of Section 4, Article I, of the current labor agreement which expressly prohibits supervisors from performing bargaining unit work."

Defendant is a public utility engaged in the production and distribution of gas and electrical power in the state of Illinois. It has four major power generating stations, one of which is located at Wood River, Illinois. Since 1950, the Company has had a collective bargaining agreement with the Union covering, among other things, employees in certain designated classifications in its power generating stations.

In September 1951, the Company started a large expansion program at its Wood River plant. The principal purpose of the expansion was to add an additional power generating unit. The estimated cost of the expansion was $40,000,000. The new unit, which was to become operative in the fall of 1964, was four times larger than the combined size of the existing four units. Its construction required erection of a new centralized control room that would house all the controls for the new generating unit as well as certain other controls for the entire plant.

In August 1963, before the new control room became operative, Local 51 requested a meeting with the Company to discuss certain contract modifications suggested by the Union, in connection with anticipated changes resulting from the expansion program. The Company and the Union met. The Company stated it planned to create the position of "control room supervisor." These supervisors would be in complete charge of the new generating unit and would not be members of the existing bargaining unit.

After several meetings, the Company, on January 31, 1964, definitely stated its position that the person in charge of the new generating unit would be classified as a control room supervisor, and that he would not be included in the bargaining unit. The Company announced it would not bargain with the Union concerning that classification but would include it within the supervisory schedule to be paid on a monthly basis.

On February 5, 1964, the Union filed charges with the National Labor Relations Board alleging the Company had refused to bargain in good faith. A complaint was issued and a hearing was held. The trial examiner issued his decision on October 28, 1964, finding that Illinois Power Company had, in fact, notified and consulted with Local 51 concerning the reclassification of employees to the posi-

tion of control room supervisor. The examiner also held "the control room supervisors in question are supervisors within the meaning of the Act and as such are not part of the bargaining unit." The trial examiner recommended dismissal of the complaint in its entirety. Exceptions were filed with the Board by the general counsel and by Local 51 as the charging party.

On November 23, 1965, after the briefs in the instant appeal had been filed, but several days prior to oral argument, the Labor Board rendered a decision wherein it stated—"The sole issue presented here is whether respondent's newly created positions of control room supervisor are supervisory within the meaning of Section 2(11) of the Act. We agree with the trial examiner that such positions, which involve approximately five individuals, are supervisory, and that Respondent's refusal to bargain with the Union on behalf of such individuals was therefore not violative of Section 8(a)(5) of the Act."

It was not until November 6, 1964—nine days after the trial examiner's decision—that Local 51 first filed its grievance with the Company alleging that Illinois Power had unilaterally reclassified certain employees known as control room supervisors, and in so doing, had placed them outside the bargaining unit.

The Company refused to accept the grievance on two grounds—1) the issues raised by the grievance were then pending before the National Labor Relations Board, and 2) the Union's right to employ the grievance and arbitration procedure had been waived, as the purported grievance had not been filed within the specific time limit provided for in the labor agreement.

The Company refused to accept and process the grievance because it argued that Local 51 had elected its remedy by filing a refusal to bargain charge against the Company on the question of whether or not the employees were supervisors under the definition of the Labor Management Relations Act.

As hereinbefore stated, the Labor Board held such employees to be supervisors. But, the Board did not rule on the question whether some of the work performed by such employees might be work which, under the contract, belonged to the bargaining unit. Under the bargaining contract, this question would be properly subject to arbitration provided that Local 51 has not waived that procedure.

The collective bargaining agreement between Local 51 and the Company contains a very broad grievance clause and permits any "difference" to be grieved, and in due course, arbitrated. However, the parties agreed that the grievance procedure must be invoked within five working days after the facts upon which the "difference" is based, first occur or first become known, that "In the event any of the foregoing time limits are not observed the difference shall be assumed to have been settled and the right to invoke Step 1 or any succeeding Step on arbitration as the case may be shall be deemed to have been waived."

Local 51 knew not later than February 5, 1964, of the so-called "difference" between it and Illinois Power. Yet, it did not file this grievance until nine months later. Neither its motion for summary judgment filed in the District Court on January 26, 1965, nor the accompanying affidavit claimed that there had been any compliance with the contractual time limits or offered any reason why the Union had failed to file its grievance at an earlier date.

Whether Local 51 has waived the right to invoke the grievance procedure depends upon an interpretation of the decision in John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898. There, as here, the grievance procedure in the contract provided for compliance with steps 1 and 2 as a prerequisite to the right to arbitrate under step 3.

This Court has held that it is the courts which should determine whether procedural conditions to arbitration have been met. Brass & Copper Workers Federal

Labor Union (No. 19322) AFL-CIO v. American Brass Company, 7 Cir., 272 F.2d 849, cert. den. 363 U.S. 845, 80 S.Ct. 1609, 4 L.Ed.2d 1728. The First Circuit is in accord. Boston Mutual Life Insurance Company v. Insurance Agents International Union, 258 F.2d 516. However, the Second, Third, Fifth and Sixth Circuits have held the question of "procedural arbitrability" is for the arbitrator.[1]

In *Livingston,* supra, the Supreme Court resolved the conflict between the Circuits, holding that procedural disputes relating to arbitrability are for the arbitrator, not the court, to decide. The Court said, 376 U.S. at page 559, 84 S.Ct. at page 919: "Although a party may resist arbitration once a grievance has arisen, as does Wiley here, we think it best accords with the usual purposes of an arbitration clause and with the policy behind federal labor law to regard procedural disagreements not as separate disputes but as aspects of the dispute which called the grievance procedures into play." Also, at page 557, 84 S.Ct. at page 918, it was stated: "Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."

Our previous opinion in this case was filed December 28, 1965. A petition for rehearing was filed and by order dated February 15, 1966, the opinion which had been filed was withdrawn and vacated. The opinion now presented is a substitute for the opinion which was withdrawn.

In view of the Supreme Court's holding in Livingston, the order and judgment of the District Court is

Affirmed.

---

[1]. Livingston v. John Wiley & Sons, Inc., 2 Cir., 313 F.2d 52; Radio Corporation of America v. Association of Pro. Eng. Personnel, 3 Cir., 291 F.2d 105; Deaton Truck Line, Inc. v. Local Union 612 etc., 5 Cir., 314 F.2d 418, and Local 748 of Int. U. of E. R. & M. Wkrs. AFL-CIO v. Jefferson City Cabinet Co., 6 Cir., 314 F.2d 192.