**INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL–CIO, Plaintiff-Appellant,**

**v.**

**FLAIR BUILDERS, INC., Defendant-Appellee.**

**No. 18334.**

United States Court of Appeals, Seventh Circuit.

Feb. 5, 1971.

Rehearing Denied April 12, 1971.

Bernard M. Baum, Daniel S. Shulman, Robert H. Baum, Chicago, Ill., for plaintiff-appellant.

J. Robert Murphy, Aurora, Ill., Edward J. Griffin, Chicago, Ill., for defendant-appellee; Murphy, Griffin & Dixon, Aurora, Ill., and DeFrees, Fiske, Voland, Alberts & Hoffman, Chicago, Ill., of counsel.

Before SWYGERT, Chief Judge, DUFFY, Senior Circuit Judge, and STEVENS, Circuit Judge.

SWYGERT, Chief Judge.

The primary question in this appeal is whether a court may properly dismiss

the complaint on the basis of laches resulting from dilatory notification of the existence of a dispute in a suit brought to compel arbitration with regard to the dispute.

This action was brought in November 1968 by the International Union of Operating Engineers, Local 150, AFL–CIO, under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), against Flair Builders, Inc., a construction company located in Sugar Grove, Illinois.

Initially, the union sought specific performance of an alleged bargaining agreement between the parties. Upon Flair's motion the district court dismissed the complaint for failure to state a claim. At the time of the dismissal the district judge, having observed that an "additional issue" had been suggested by the parties, namely, whether a "memorandum agreement" executed by the parties constituted a binding collective bargaining agreement, suggested that this issue be submitted to arbitration. Thereafter, the union demanded arbitration of "the issues pending before the court concerning the applicability of the contract and the subsequent issues of possible violations." After Flair refused to arbitrate, the union filed an amended complaint seeking to compel arbitration.

The company filed a motion to dismiss the amended complaint, contending that the action was barred by laches. The motion was denied, and the cause was set for an evidentiary hearing to determine which issues, if any, the employer agreed to arbitrate. After hearing evidence, the court filed its order and memorandum opinion dismissing the action. A summary of the evidence submitted to the district court follows.

The union represents laborers who operate heavy equipment, such as cranes, in the construction industry and negotiates master collective bargaining agreements with contractor associations in various parts of Illinois. The union also negotiates individual memoranda of agreement with contractors who are not members of the contractor associations, such as Flair. These memoranda adopt and bind the nonmember contractor to the terms of the master agreements.

On June 1, 1963, the union entered into a master agreement with a number of contractor associations in northern Illinois. This agreement terminated on May 31, 1966. On May 12, 1964, the union and Flair signed a memorandum of agreement which specifically adopted the terms of the then existing master agreement. Flair also agreed to adopt any additional master agreements entered into between the union and the contractor associations.

At the time of execution of the memorandum in 1964, the company had one employee covered by the agreement. Upon the insistence of the union this employee joined the union, but left his employment about two weeks later. Other nonunion employees continued from time to time to operate Flair's single piece of equipment. In 1965, the company added a second piece of heavy equipment, in 1966 a third, and in 1967 a fourth, all of which were operated by company employees who were nonunion. Yet during all this period of time, from May 1964 until the summer of 1968, the company was not contacted by the union.

In the meantime, in 1966, the union and the contractor associations entered into a new master agreement which contained a stipulation that "should any difference arise between the parties hereto which cannot be settled by their representatives, within 48 hours of the occurrence, such difference shall be submitted to arbitration." It was further stipulated that the arbitrators should meet within six days after it was determined that the dispute could not be settled.

In June 1968, the union business agent visited the company's job site and discovered a nonunion employee operating a piece of equipment. Shortly thereafter, the employee joined the union; however, the company refused to

pay the union wage scale.[1] Subsequently the union filed the instant suit.

In dismissing the action the district court ruled that the union had been guilty of laches by its unjustified delay in the enforcement of its contract with the company. In the course of his memorandum opinion the district judge said:

> To require Flair to respond, through arbitration, to general charges of non-compliance with contract provisions allegedly beginning more than two years before this suit was filed would impose an extreme burden on its defense efforts. Especially is this so when, as demonstrated at the hearing, Flair understandably considered the contract to have been abandoned soon after its inception. Plaintiff has offered no explanation for its delay in enforcement; yet to compel arbitration would reward plaintiff for its own inaction and subject defendant to the risk of liability because of actions taken or not taken in reliance on plaintiff's apparent abandonment.

The district judge also found that there had been no contact whatsoever between the union and Flair from the date of the signing of the memorandum of agreement in 1964 until the summer of 1968. This determination was made after the district judge had heard conflicting testimony and concluded that the testimony of Flair's witness was more credible than that of the union's business agent because of inconsistencies in the latter's testimony. Such findings of fact based on the credibility of witnesses are entitled to great weight on review. The record reveals no justification for overturning the trial court's findings. Moreover, when the trial judge requested that "the [union] by letter to this court within ten days should specify in some detail what violations of the purported agreement it

seeks to arbitrate, and the time of their occurrence * * *," the union's response was devoid of specificity and amounted to nothing more than the concluding statement of its letter that it sought "to arbitrate the total violation of the entire agreement in question since * * * June 1, 1966."

The factual context of this appeal thus narrows the issue before us to the question of whether a party to a collective bargaining agreement which contains an arbitration clause may be so dilatory in making the existence of vaguely delineated disputes known to the other party that a court is justified in refusing to compel the submission of such disputes to arbitration. The district court found for Flair and dismissed the complaint on the ground of laches. We affirm.

The union contends that the question of whether its dilatory notification of the existence of a dispute should operate to bar this suit to force the employer to arbitration is a question of procedural timeliness which courts are required to leave to the arbitrator for determination pursuant to the Supreme Court's decision in John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). We find the characterization of such delay as "procedural untimeliness" inappropriate.

The procrustean reading of *Wiley* urged by the union is unsupported by the language of the opinion, and we are convinced that nothing said in *Wiley* forecloses judicial determination that a dispute is so stale before its announcement that courts should decline to compel its submission to arbitration.

*Wiley* arose out of the refusal by the surviving corporation of a corporate merger to submit to arbitration a dispute between it and a union which had

---

[1] In the fall of 1968, the union filed a complaint with the Wage and Hour Division of the Department of Labor on behalf of the employee for back wages. After the complaint was sustained, the employee was discharged. Thereupon an unfair labor practice charge was filed with the National Labor Relations Board. As part of a settlement agreement between the Board and the company, the employee received back pay and was offered reinstatement.

executed a collective bargaining agreement including an arbitration clause with another corporation which did not survive the merger. As Mr. Justice Harlan noted in the opinion of the Court, the major questions presented in *Wiley* were:

> (1) whether a corporate employer must arbitrate with a union under a bargaining agreement between the union and another corporation which has merged with the employer, and, if so, (2) whether the courts or the arbitrator is the appropriate body to decide whether *procedural prerequisites which, under the bargaining agreement, condition the duty to arbitrate* have been met. 376 U.S. at 544, 84 S.Ct. at 911 (emphasis added).

It is thus apparent that, to the extent *Wiley* was concerned with the issue of timeliness of a demand for arbitration, it dealt only with who must decide whether arbitration is barred by untimeliness in the satisfaction of some procedural prerequisite to arbitration deriving from the dictates of the grievance process itself. This conclusion is amply supported by other language in the opinion. For example, the Court stated:

> [W]e do not rule out the possibility that a union might abandon its right to arbitration by failing to make its claims known. * * * The Union made its position known well before the merger and never departed from it. 376 U.S. at 551, 84 S.Ct. at 915.

We therefore conclude that *Wiley* determined only that the effect of *intrinsic* untimeliness relating to whether the dictates of a prescribed process for the resolution of union-employer disagreements have been satisfied must be determined by the arbitrator. But that is not the form of delay presently before us. The delay of the union in this case is more appropriately described as *extrinsic* untimeliness in that it does not raise any question of whether prescribed procedures for the resolution of disputes have been satisfied but rather requires the determination of whether delay in the mere notification of the existence of a dispute has prejudiced the ability of the employer to respond without regard to whether procedural prerequisites to arbitration have been followed. As another circuit has observed in a similar case:

> In deciding whether the union, in this case, is barred from prosecuting its cause of action because of its laches, we are not indulging in the judicially unwarranted task of interpreting the collective bargaining agreement. Laches is independent of any procedure established by the collective bargaining agreement and a decision on laches adds or subtracts nothing from the meaning of the agreement. Furthermore, consideration of the issue in no way involves a consideration of the merits of the underlying substantive issue. * * * The union first gave notice of the existence of a dispute * * * more than one year after the dispute arose * * * Failure to give notice and request arbitration until such a late date would present serious impediments to [the employer] in making an effective defense. Amalgamated Clothing Workers v. Ironall Factories Co., 386 F.2d 586, 591–592 (6th Cir. 1967).

In the instant case, the union is seeking to compel arbitration of an amorphous dispute as to general noncompliance with the provisions of a collective bargaining agreement. Assuming, *arguendo*, that notice of a dispute is effectively given when stated with as little specificity as here, we note that the district court determined from the testimony of conflicting witnesses that there was no contact whatever between the employer and the union from the effective date of the June 1, 1966 master agreement until the summer of 1968. From this, the district court determined that the union's suit to compel arbitration was barred by laches. We find no error in that determination.

The judgment of the district court is affirmed.

STEVENS, Circuit Judge (dissenting).

This litigation arises out of a collective bargaining agreement which Flair executed in 1964 and which was still in effect when the union filed its complaint in 1968. The union asserts that Flair failed to pay the agreed wages to one employee in 1964, hired nonunion employees in 1965, 1966, and 1967, and generally refused to follow contract procedures for hiring personnel and contributing to a pension fund. The employer defended on the ground that the contract had been abandoned by the union and, therefore, was no longer in effect. The trial court rejected the abandonment defense but held that the union was guilty of laches.

The appropriateness of laches as a defense to a labor dispute involves a consideration of several questions which can best be answered by one who is familiar with the collective bargaining relationship between the parties. Although the trial court stated that the defense of the union's charges would impose an "extreme burden" on Flair, the record does not answer these questions: Does the area-wide master agreement contemplate that a small employer like Flair shall have the burden of full compliance with its terms? Would routine records ordinarily retained by employers disclose the information on which Flair relies to justify its disregard of its written undertakings? Was the lack of communication between the union and Flair entirely the fault of the union? Even if it was too late in 1968 for the union to question Flair's breaches in 1964 and 1965, was it also too late to ask a neutral third party to pass judgment on 1966 and 1967 breaches, as well as a continuing refusal to abide by the agreement?

The task of answering questions such as these—determining whether the union's delay was unreasonable and wheth-er Flair's defense has been significantly prejudiced by that delay—inevitably involves a consideration of the merits of the underlying dispute between the parties. This task should, therefore, be performed by the arbiter who is also responsible for deciding the merits of the basic controversy.

Considerations affecting the orderly disposition of litigation, as well as a due regard for our national labor policy, persuade me that the defense of laches should be processed like other "procedural" questions which grow out of the dispute and bear on its final disposition. See John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 556–559, 84 S.Ct. 909, 11 L.Ed.2d 898; Local Union No. 51, International Brotherhood of Electrical Workers, AFL–CIO v. Illinois Power Company, 357 F.2d 916, 918–919 (7th Cir. 1966). Separating laches from the merits for trial before a separate tribunal will frequently result in an unnecessary duplication of effort and may commit the disposition of the laches issue to the tribunal which is less qualified to evaluate it fairly in the context of the collective bargaining relationship. Moreover, even in those cases which are promptly terminated by judicial approval of the defense, the price for efficiency will be some loss of union confidence in the fairness of the procedures which are offered as a substitute for collective self-help. Unless arbitration procedures command labor's respect, less civilized methods of resolving disputes will be employed with greater frequency.

In many collective bargaining agreements the employer has obtained a "no strike" pledge from the union in exchange for a commitment to arbitrate disputes. Unions must honor that bargain. Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199. We should compel employers to honor their *quid pro quo*. I would reverse.