## LODGE 1327, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, Plaintiff-Appellee,

v.

## FRASER & JOHNSTON COMPANY, a corporation, Defendant-Appellant.

### No. 25234.

United States Court of Appeals, Ninth Circuit.

Dec. 22, 1971.

---

Nathan R. Berke (argued), of Severson, Werson, Berke & Melchior, San Francisco, Cal., for appellant.

Joseph R. Grodin (argued), of Brundage, Neyhart, Grodin & Beeson, San Francisco, Cal., for appellee.

Before MADDEN,* Judge, United States Court of Claims, CARTER, Circuit Judge and POWELL,** District Judge.

JAMES M. CARTER, Circuit Judge.

Fraser & Johnston Company (hereafter the "Company") appeals from a summary judgment against Lodge #1327 (hereafter the "Union") which compels it to arbitrate its dispute with the appellee Union. The suit was brought under § 301 of the Labor Management Relations Act of 1947 (LMRA), June 23, 1947, c. 120, Title III, § 301, 61 Stat. 156, 29 U.S.C.A. § 185(a), which authorizes federal courts to exercise jurisdiction over suits brought to enforce collec-

---

* Honorable J. Warren Madden, Senior Judge of the United States Court of Claims, sitting by designation.

** Honorable Charles L. Powell, United States District Judge, Eastern District of Washington, Spokane, Washington, sitting by designation.

tive bargaining agreements.[1]  The appeal raises several issues: (1) whether the court's jurisdiction was' pre-empted by the National Labor Relations Board; (2) whether there were genuine issues of material fact, so that summary judgment should have been denied; (3) whether the Union's delay or its failure to follow the grievance procedure caused it to lose its right to arbitration.[2]  We affirm.

### Facts

The basic facts are not in dispute. The Company notified the Union that it planned to move its operations from San Francisco to San Lorenzo, and that it planned to lay off its San Francisco employees.  The Union, taking the position that the collective bargaining agreement entitled the employees to employment at San Lorenzo, filed unfair labor practice charges with the National Labor Relations Board.  That body has since found the Company guilty of unfair labor practices.  Fraser & Johnston Co., 189 N.L.R.B.  No.  17  (March 31, 1971 Release).[3]

The Union also filed a complaint in the district court for injunction, damages, and declaratory relief.  Later, when the Company refused to arbitrate, the Union amended its complaint to include a count seeking an order to compel arbitration.  Upon a motion for summary judgment on this count, the district court directed the Company to proceed with arbitration.

### Pre-emption

The Company contends that the NLRB has exclusive jurisdiction in this controversy.  It relies on "the general principle that the National Labor Relations Act preempts state and federal court jurisdiction to remedy conduct that is arguably protected or prohibited by the Act."  Amalgamated Ass'n of St. El. Ry. & M. C. Emp. v. Lockridge, 403 U.S. 274, 276, 91 S.Ct. 1909, 1913, 29 L. Ed.2d 473 (1971); *accord*, San Diego Building Trades Council v. Garmon, 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

■ The pre-emption doctrine, however, is not without its exceptions.  Not covered by the doctrine are suits brought under § 301 of the LMRA such as this one.  Amalgamated Ass'n of St. El. Ry. & M. C. Emp. v. Lockridge, 403 U.S. at 297–301, 91 S.Ct. 1909; Carey v. Westinghouse Electric Corp., 375 U.S. 261, 268, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964); Smith v. Evening News Ass'n, 371 U.S. 195, 197, 83 S.Ct. 267, 9 L.Ed. 2d 246 (1962).  Such actions are judicially cognizable because, as the history of the enactment of § 301 reveals, "Congress deliberately chose to leave the enforcement of collective agreements 'to the usual processes of the law.' "  Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 513, 82 S.Ct. 519, 526, 7 L.Ed.2d 483 (1962).  "[Section 301] expresses a federal policy that federal courts should enforce these [arbitration] agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way."  Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 455, 77 S.Ct. 912, 917, 1 L.Ed.2d 972

1.  "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined by this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties without respect to the amount in controversy or without regard to the citizenship of the parties."  29 U.S.C. § 185(a) (1970).

2.  In its brief, the Company also alleges that the Union has failed to join an in-dispensable party, the International Brotherhood of Electrical Workers (I.B.E.W.). Since the time the case was before the district court, however, the I.B.E.W. has withdrawn its interest in the dispute and can no longer be considered an indispensable party.

3.  Appellant's challenge to that decision is the subject of another proceeding before this court.  Fraser & Johnston Company v. N.L.R.B.  #71–1438.

(1957).[4] The district court, thus, had jurisdiction to compel arbitration.[5]

■ The possibility of conflict with the Board is no barrier to resort to the arbitration tribunal. Carey v. Westinghouse Electric Corp., 375 U.S. 261, 272, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964). Where arbitration has already taken place by the time a dispute reaches the Board, "the Board shows deference to the arbitral award, provided the procedure was a fair one and the results were not repugnant to the Act." Id. at 270–271, 84 S.Ct. at 408; accord, International Harvester Co., 138 N.L.R.B. 923, 925–26 (1962), enforced sub nom. Ramsey v. N. L. R. B., (7 Cir. 1964), 327 F.2d 784; Raley's Inc., 143 N.L.R.B. 256, 258–59 (1963); Monsanto Chemical Co., 97 N.L.R.B. 517 (1951). And even where arbitration has not yet resulted in an award, the Board in some cases will leave the decision to that process. Collyer Insulated Wire, 192 N.L.R.B. No. 150 (1971).

■ The Company, nevertheless, maintains that this principle of deference does not apply in that the Board has already acted.[6] Whether deference is deserved, however, is largely within the discretion of the Board, Carey v. Westinghouse Electric Corp., supra; International Harvester Co., supra; Monsanto Chemical Co., supra, and we will not decide that question for them. If the arbitration award goes beyond the Board's recent decision, as it indeed may,[7] the Board may, nevertheless, choose to follow the arbitration award. And were we to follow the course suggested by the Company, those who would prefer a Board decision would need only to stall the arbitration process. Such a result would undermine the federal policy in favor of arbitration.

## Summary Judgment

The Company argues that summary judgment should have been denied in that there remained a genuine issue of

4. Section 203(d) of the Labor Management Relations Act declares "[f]inal adjustment by a method agreed upon by the parties . . . to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." 29 U.S.C. § 173(d).

5. United Ass'n of Journeymen & Apprentices, etc. v. Foley (9 Cir. 1967), 380 F.2d 474, relied upon by the Company, is inapposite. That case held that the district court did not abuse its discretion in staying the union's action pending NLRB adjudication where the NLRB trial examiner had already decided against the union. Foley, moreover, did not consider Carey or Smith.

Portland Web Pressmen's Union v. Oregonian Pub. Co. (9 Cir. 1960), 286 F.2d 4, cert. denied, 366 U.S. 912, 81 S.Ct. 1086, 6 L.Ed.2d 237, also cited by the Company, predates Smith and Carey and deserves little weight.

6. The Union offers several policy considerations which, in its opinion, ought to govern accommodation between NLRB jurisdiction and the arbitral process. It argues that where the NLRB process has resulted in a decision, a court faced with a request to compel arbitration should consider:

(1) Is the relief being sought in arbitration consistent with or in conflict with the NLRB determination?

(2) Does the relief being sought in arbitration go beyond the relief granted by the NLRB?

(3) Does the arbitration have different legal underpinnings than the NLRB proceedings, so that an arbitration result in favor of a party seeking arbitration could stand even if the NLRB decision is not enforced?

(4) What would be the practical impact upon the parties of the various alternatives available to the court?

We leave the evaluation of this list of considerations to future cases. We have no problem in establishing jurisdiction on the basis of well-recognized principles.

7. The NLRB decision grants full reinstatement at San Lorenzo of all bargaining unit employees, with back pay and recognition of the collective bargaining agreement as applicable to the San Lorenzo plant. Fraser & Johnston Co., 189 N.L.R.B. No. 17 (March 31, 1971 Release). The relief which the Union is requesting in arbitration goes further in asking that all persons who have been employed at San Lorenzo be made whole for the difference between the wages and benefits received and the wages and benefits they should have received under the agreement.

material fact as to whether the collective bargaining agreement and its arbitration clause applied to the dispute in question. A determination of this question, it argues, requires an examination of the intent of the parties to the contract.

The controlling principles are clear. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960).

■ The arbitration clause is, without question, susceptible to an interpretation that covers the dispute. The clause, Article XI, section 1 of the contract, provides that grievances concerning the "interpretation or application" are matters for arbitration. A dispute as to whether the collective agreement applies to the San Lorenzo plant inherently requires the interpretation and application of the agreement. *See also* General Warehousemen & Emp. Union No. 636 v. American Hdwre. Supply Co. (3 Cir. 1964), 329 F.2d 789, 792–793.

■ Since there is no genuine issue of fact as to whether the arbitration clause is susceptible of an interpretation under which it covers the dispute, summary judgment was proper. The cases cited by the Company, which are said to hold that summary judgment is improper where there is a good faith dispute as to the intent of the contracting parties, are inapposite. These cases involve ordinary contracts.[8] A collective bargaining agreement is more than a contract; it is an attempt at self-government. In dealing with such agreements courts should not be preoccupied with principles which might apply to an ordinary contract. *See* United Steelworkers v.

American Mfg. Co., 363 U.S. 564, 567, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

### The Union's Failure to Follow The Grievance Procedure.

■ The Company contends that the Union failed to satisfy certain steps in the grievance procedure and in turn lost its right to arbitration. This, however, is a procedural question and the Union is entitled to arbitration as to it. Once it is determined that a dispute is arbitrable, procedural questions are for the arbitrator. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557–559, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

The Company also argues that the Union's delay in requesting arbitration constituted laches, and that as such, it should have barred the Union's right to equitable relief. There is some question, however, whether laches is an appropriate defense to a suit seeking to compel arbitration of a grievance arising out of a collective bargaining agreement. Arguably, the question of laches is for the arbitrator.

Laches was not before the court in John Wiley & Sons, Inc. v. Livingston, *supra.* The court did not rule out "the possibility that a union might abandon its right to arbitration by failing to make its claim known." *Id.* at 551, 84 S.Ct. at 915. Subsequent circuit decisions have disagreed as to whether laches is a valid defense to a suit to compel arbitration or merely a question for the arbitrator. *See* Tobacco Workers International Union, Local 317 v. Lorillard Corp. (4 Cir. 1971), 448 F.2d 949; International Union of Operating Engineers, Local 150 v. Flair Builders, Inc. (7 Cir. 1971), 440 F.2d 557, 560; Amalgamated Clothing Workers v. Ironall Factories Co. (6 Cir. 1967), 386 F.2d 586, 591.

■ We do not reach this question today, however, as we are of the opinion that the Company is not in a position to raise the defense. Laches was not

8. *E. g.*, United States v. Kansas Gas & Electric Co. (10 Cir. 1961), 287 F.2d

601; Stevens v. Howard D. Johnson Co. (4 Cir. 1950), 181 F.2d 390.

raised or relied upon below. This is understandable in view of the record. There is no evidence to support a claim that the Union did not make its claim known; there is also no evidence of prejudice to the Company. The Union and the Company had bargained collectively on the question of the move for many months prior to the move. There is no suggestion on the Company's part that the Union did not make its grievance known at the time of its receipt of notice of the move or soon thereafter.

Affirmed.