ARTHUR L'MANIAN *v.* AMERICAN MOTORISTS INSURANCE COMPANY

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. CV 6-644-14656

Argued May 15—decided June 23, 1967

*Pasquale Young,* of New Haven, for the appellant (plaintiff).

*David M. Reilly, Jr.,* of New Haven, for the appellee (defendant).

JACOBS, J. American Motorists Insurance Company, hereinafter referred to as the company, issued to Arthur L'Manian, hereinafter referred to as the insured, policy No. KT 200046, insuring him against liabilities arising out of the use of an automobile. Attached to the policy and made a part thereof was

part C, entitled, "Protection against Uninsured Motorists." This type of insurance coverage has been frequently referred to and is known as "Family Protection against Uninsured Motorists."[1]

The uninsured motorist insurance coverage provides for the payment of "all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration." Arbitration,

---

[1] "The type of insurance here involved is new and different. It defies efforts to categorize it or bring it into some preexisting classification. In legal effect it appears to be a guarantee by the insurer to a motorist, who by reason of a future automobile accident might become the prospective creditor of the owner or operator of an uninsured automobile, that it, the insurer, as the guarantor will pay such damages as the insured might be entitled to recover. Such a contract in other times would have been considered foolhardy, but installment purchases, the automobile age, the vast number of automobile accidents, and the development of actuarial skill, have all contrived to create this product of our times." *Wert v. Burke*, 47 Ill. App. 2d 453, 457. For articles dealing with the uninsured motorist coverage, see Plummer, "Handling Claims under the Uninsured Motorist Coverage," 1957 Ins. L.J. 494; Aksen, "Arbitration of Uninsured Motorist Endorsement Claims," 24 Ohio St. L.J. 589; McLaughlin, "Arbitration under Uninsured Motorists Insurance," 46 Chi. B. Rec. 58; note, "Uninsured Motorist Coverage—A Survey," 1962 Wash. U.L.Q. 134; see also such cases as *Zeagler v. Commercial Union Ins. Co.*, 166 So. 2d 616 (Fla. App.); *American Fidelity Fire Ins. Co. v. Clark*, 174 So. 2d 106 (Fla. App.); *Matter of Rosenbaum (American Surety Co. of New York)*, 11 N.Y.2d 310; *Interinsurance Exchange v. Bailes*, 219 Cal. App. 2d 830; *Wert v. Burke*, supra; *Boughton v. Farmers Ins. Exchange*, 354 P.2d 1085 (Okla.); *Edwards v. Employers Mutual Liability Ins. Co.*, 219 Ga. 121.

therefore, is incorporated into the coverage by the insuring agreement. An uninsured automobile is defined by the contract as "a land motor vehicle . . . with respect to the ownership, maintenance or use of which there is no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such land motor vehicle . . . ." Under "Conditions," the insured is required "as soon as practicable" to give to the company a written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment and other details entering into the amount payable thereunder. He is also required to submit to physical examinations by physicians selected by the company when and as often as the company may reasonably require and to submit to examinations under oath by any person named by the company, and subscribe the same as often as may be reasonably required. By a subsequent paragraph entitled, "Arbitration," the arbitrator's jurisdiction is limited to two issues, viz.: (1) legal liability, if any, of the uninsured driver for damages caused to the insured; and (2) the amount of the insured's damages. The arbitration clause also specifies that arbitration shall be conducted "in accordance with the rules of the American Arbitration Association" and "[the insured] and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this paragraph." One of the conditions of the medical expense coverage provides that "the total liability of the company for all medical expenses incurred by or on behalf of each person who sustains bodily injury as the result of one accident shall not exceed the limit of liability stated in the declarations as applicable 'to each person,'" and "all sums paid on account of

such bodily injury . . . shall be reduced by all sums paid on account of such bodily injury . . . including all sums paid under the liability coverage of this policy."

On or about December 1, 1961, the insured was involved in an accident with an uninsured motorist resulting in bodily injury to the insured. It was admitted that the policy was in full force and effect on the date of the accident, December 1, 1961. The operator of the allegedly uninsured automobile was identified as Herbert S. Herring. On November 21, 1962, the insured, in compliance with the terms of the policy, made timely demand upon the company for arbitration of the dispute. He claimed damages of $20,000. The sole arbitrator selected was David L. Daggett, of New Haven. He took evidence and heard argument. The parties submitted lengthy and comprehensive briefs. The insured's brief described in detail the nature and extent of his claimed injuries, his loss of earnings of $5140.50, and his medical expenses of $2263.75. On November 20, 1963, the arbitrator rendered his award in favor of the insured in the sum of $6963.73. In the third and final paragraph of the award, the arbitrator concluded: "This award is in full settlement of all claims submitted to this arbitration." The company paid the award in full. Thereafter, the insured made demand upon the company for payment of medical bills which were incurred as a result of the accident under the medical payments coverage clause. The company contended it was not liable to the insured under the medical expense clause because medical expenses were included in the damages for which the uninsured motorist was liable to the insured. In this action, the insured claims he is entitled to recover in addition to the award the amount of his medical expenses under the uninsured motorist medical expense clause of the policy.

The power of the arbitrator is derived from the agreement of the parties; the arbitrator has no power except as found in the submission agreement. *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574; 6A Corbin, Contracts § 1442, p. 428. The company promised to pay damages for which an uninsured driver should be liable, but it made arbitrable only two fact issues: as to fault ("legally entitled"), and as to damages if fault should be established. The arbitration was particular, not general. *Matter of Rosenbaum (American Surety Co. of New York)*, 11 N.Y.2d 310, 314. The award as made by the arbitrator here was not a complete and exhaustive document, but "[i]t has been held that the arbitrator need not make findings or give reasons for his conclusions." *Crofoot* v. *Blair Holdings Corporation*, 119 Cal. App. 2d 156, 185. "There is no rule of law which requires arbitrators to make a finding of facts. The award must contain the actual decision which results from their consideration of the matter submitted to them." *Von Langendorff* v. *Riordan*, 147 Conn. 524, 527; 5 Am. Jur. 2d, Arbitration and Award, § 126; 6 C.J.S., Arbitration and Award, § 74.

The trial court held that the award in favor of the insured of $6963.73 was fair, just and reasonable and that the award included the insured's medical expenses of $2263.75. It concluded that the insured "is not entitled under [the] separate provisions of the [uninsured motorists] policy to recover twice for medical reimbursement." We agree. "The purpose of the parties in submitting, is, to have a final determination of every matter comprehended within the submission. Great hardships might result from a restriction of the award to the matters actually brought before the arbitrators, if the reference comprehended other demands." *Bunnel* v. *Pinto*, 2 Conn. 431, 434. "[W]e do not believe that plaintiff

is entitled to recover both under the medical payments clauses and the liability clauses for medical expenses incurred in one and the same accident. It would be inequitable to construe the policy contract so as to allow the plaintiff to collect double the amount of his damage. It strikes us that a reasonable interpretation of the policy clauses would be that plaintiff had the choice of either claiming the amount of the medical expenses under the medical clauses or the liability clauses of the policy, but certainly not under both." *Hawayek* v. *Simmons,* 91 So. 2d 49, 56 (La. App.); see *Gunter* v. *Lord,* 242 La. 943; cf. *Sims* v. *National Casualty Co.,* 171 So. 2d 399 (Fla. App.); *Hack* v. *Great American Ins. Co.,* 175 So. 2d 594 (Fla. App.). Unless there is finality in the award, "the arbitration award would be the beginning rather than the end of the controversy and the protracted litigation which arbitration is meant to avoid would be invited." *Matter of Mole (Queen Ins. Co.),* 14 App. Div. 2d 1, 3 (N.Y.).

There is no error.

In this opinion PRUYN, J., concurred.[2]

---

[2] Argument on this appeal was heard by a three-judge panel, consisting of *Pruyn,* presiding judge, and *Jacobs* and *Levine, Js.* Before the rendition of this opinion, Judge Levine was elevated to the Court of Common Pleas. The parties thereafter stipulated in writing as follows: "The parties to the above-entitled action hereby stipulate that the above case which was heard on May 15, 1967, may be decided by the following two judges: The Honorable Erving Pruyn, Presiding Judge and the Honorable David H. Jacobs."