BEL PRE MEDICAL CENTER, INC. *v.*
FREDERICK CONTRACTORS, INC.

[No. 512, September Term, 1973.]

*Decided May 21, 1974.*

The cause was argued before THOMPSON, MOYLAN and DAVIDSON, JJ.

*William C. Staley,* with whom were *Staley, Prescott & Ballman* on the brief, for appellant.

*Rex L. Sturm* and *Manuel M. Weinberg,* with whom was *R. Edwin Brown* on the brief, for appellee.

DAVIDSON, J., delivered the opinion of the Court.

Bel Pre Medical Center, Inc., appeals from an order of the Circuit Court for Montgomery County which, on the motion of Frederick Contractors, Inc., directed the parties to stay the arbitration of a dispute arising out of a construction contract between them. The facts are essentially undisputed.

On 4 August 1971 the parties entered into a contract entitled "Standard Form of Agreement Between Owner and Contractor" which included as a part of the contract a document entitled "General Conditions of the Contract for Construction." [1] By the terms of this contract the appellee, Frederick Contractors, Inc. (hereinafter referred to as the contractor), agreed, for a stipulated sum, to build for the appellant, Bel Pre Medical Center, Inc. (hereinafter referred

---

1. Both the "Standard Form of Agreement" and the "General Conditions" are form documents prepared by the American Institute for Architects.

to as the owner), a two-story addition to the owner's nursing home in Montgomery County.

The relevant portions of the contract, in the order of their importance, provide as follows:

"7.10.1 [General Conditions]. All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, except as set forth in Subparagraph 2.2.9 with respect to the Architect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment as provided by Subparagraphs 9.7.5 and 9.7.6, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement so to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

"7.10.2 [General Conditions]. Notice of the demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect. The demand for arbitration shall be made within the time limits specified in Subparagraphs 2.2.10 and 2.2.11 where applicable, and in all other cases within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall it be made after institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

"2.2.7 [General Conditions]. Claims, disputes and

other matters in question between the Contractor and tne Owner relating to the execution or progress of the Work or the interpretation of the Contract Documents shall be referred initially to the Architect for decision which he will render in writing within a reasonable time.

"2.2.9 [General Conditions]. The Architect's decisions in matters relating to artistic effect will be final if consistent with the intent of the Contract Documents.

"2.2.10 [General Conditions]. Any claim, dispute or other matter that has been referred to the Architect, except those relating to artistic effect as provided in Subparagraph 2.2.9 and except any which have been waived by the making or acceptance of final payment as provided in Subparagraphs 9.7.5 and 9.7.6, shall be subject to arbitration upon the written demand of either party. However, no demand for arbitration of any such claim, dispute or other matter may be made until the earlier of: .1 the date on which the Architect has rendered his decision, or .2 the tenth day after the parties have presented their evidence to the Architect or have been given a reasonable opportunity to do so, if the Architect has not rendered his written decision by that date.

"2.2.11 [General Conditions]. If a decision of the Architect is made in writing and states that it is final but subject to appeal, no demand for arbitration of a claim, dispute or other matter covered by such decision may be made later than thirty days after the date on which the party making the demand received the decision. The failure to demand arbitration within said thirty days' period will result in the Architect's decision becoming final and binding upon the Owner and the Contractor. If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence but will not

supersede any arbitration proceedings except where the decision is acceptable to the parties concerned."

On 12 January 1973 the architect and representatives of the owner and the contractor met to inspect the premises and to determine what items remained to be completed by the contractor. On 16 January 1973 the architect wrote a letter to the owner which stated as follows:

"We hereby certify that to the best of our knowledge, information and belief, and on the basis of our observation and inspection the Work has been completed in accordance with the terms and conditions of the Contract Documents and that the entire balance found to be due the Contractor, except as noted below is due and payable.

We have attached herewith a copy of our final "Punch List" dated 12 January 1973. We feel an equitable sum of $5,000.00 should be withheld from final payment of retainage until this "Punch List" is complete."

The "punch list" contains 58 separate minor items remaining to be done. On or about 16 January 1973, the contractor submitted written requisitions for payment. On 27 January 1973 a meeting took place between the owner and the contractor at which a dispute arose which was not then resolved.[2] Final payment has not been made by the owner.

On 22 March 1973 the contractor recorded a mechanic's lien on the subject property and on 30 April 1973 filed a bill in equity to foreclose on the lien. On 22 May 1973 the owner made a demand upon the contractor for arbitration in which he charged that the contractor:

1) failed to construct the building according to specifications;

2) failed to recognize the architect as an employee of the owner;

---

2. The record does not reveal the nature of the dispute.

3) interfered with the contractual relationship between the architect and the owner; and

4) failed to obtain certificates of payment signed by the architect.

On 8 June 1973 the contractor refused to participate in the arbitration proceedings "unless ordered by the Circuit Court for Montgomery County to do so."

On 24 May 1973 the owner moved to strike the mechanic's lien on the grounds that arbitration was the sole and exclusive remedy which the contractor could utilize to enforce his rights. On 12 June 1973 this motion was denied. On 19 June the owner filed his answer to the contractor's bill of complaint. He admitted all of the contractor's allegations except the amounts in dispute, and averred that the contractor had waived his right to file a mechanic's lien by failure to demand arbitration. On 27 June 1974 the contractor applied for an ex parte injunction to stay the arbitration demanded by the owner on the ground that the owner had failed to demand arbitration within thirty days of the receipt of the architect's letter. The ex parte injunction was granted.

On 12 July a hearing was held to determine whether a permanent injunction enjoining the arbitration proceeding should issue. Judge Philip M. Fairbanks found that the question presented was "whether the provisions [¶¶ 2.2.10 and 2.2.11 of the General Conditions] requiring demand for arbitration to be made within thirty days of the architect's decision apply or whether the provisions [¶ 7.10.2 of the General Conditions] requiring demands for arbitration to be made within a reasonable time after claim or within the statute of limitations apply." Judge Fairbanks determined that the architect's letter of 16 January 1973 constituted "his decision that the work was completed and that the contractor was entitled to be paid;" that under the contract the owner was required to demand arbitration "within thirty days of the architect's letter, or at most within thirty days of January 27, 1973;" and that the owner, therefore, had sought arbitration too late. The judge further found that

"even were the provisions of 2.2.10 and 2.2.11 not applicable, the owner's demand for arbitration comes not within a reasonable time, having been delayed until nearly a month after the filing of the mechanic's lien." An order permanently enjoining the parties from proceeding with arbitration was entered on 3 August 1973. It is this order from which the owner appeals.[3]

The question before us concerns the effect of an arbitration clause agreed to by the owner and the contractor. Appellant-owner contends here, as he did below, that the agreement of the parties to arbitrate "all claims, disputes, and other matters in question arising out of, or relating to this contract or the breach thereof" is binding upon the parties and precludes a court from determining the amount of money due for labor and materials furnished by the contractor to the owner. He insists that by agreement of the parties this issue must be determined by the arbitrator. Appellee-contractor does not dispute the fact that the issue of the amount of money due and owing for labor and materials is arbitrable under the terms of the agreement but contends that the owner waived his right to arbitration by failing to file a timely demand for arbitration. In support of this position the contractor argues, in the alternative, either that the architect's letter of 16 January 1973 constituted an "architect's decision" within the meaning of Paragraph 2.2.10 of the agreement so that under Paragraph 2.2.11 a demand for arbitration was required to be filed within 30 days, or that a dispute arose at the meeting of 27 January 1973 so that under Paragraph 7.10.2 a demand for arbitration had to be filed within a reasonable time. The contractor asserts that in either event the demand for arbitration, made on 22 May 1973, was too late. The owner asserts that the architect's letter of 16 January 1973 is not

---

**3.** The order to stay arbitration is an appealable order. Code (1957), Art. 7, § 18(a) (2). Section 18(a) (2) has been repealed and reenacted, with minor changes, as § 12-303 (c) (9) of the Courts Article. 1973 Laws of Maryland (Ex. Sess.), Ch. 2, § 1, Title 12, Subtitle 3. Section 12-303(c) (9) of the Courts Article applies in any action commenced after 31 December 1973 and, so far as practicable, to all proceedings then pending. 1973 Laws of Maryland (Ex. Sess.), Ch. 2, § 18.

an "architect's decision" so that he was not under an obligation to demand arbitration within 30 days; that his demand for arbitration was filed well within the period of limitations established by Paragraph 7.10.2 of the agreement and was therefore filed within a reasonable time; and, most importantly, that under the broad language of Paragraph 7.10.1 the very question of whether there was compliance on his part with the procedural requirements of the contract for the initiation of arbitration proceedings is to be determined by the arbitrator and not by the court.

"Since time immemorial, governments have provided means, either in the person of the Sovereign himself, or in the form of courts, for settlement of disputes between subjects." Mullen, "Arbitration under Maryland Law," 2 *Md. L. Rev.* 326 (1938). Arbitration is the process whereby parties voluntarily agree to substitute a private tribunal for the public tribunal otherwise available to them. The arbitration process provides a speedy, informal, relatively inexpensive, and private procedure for resolving controversies arising out of commercial transactions, as well as a tribunal uniquely qualified to resolve such disputes. *Schreiber v. Pac. Coast Fire Ins. Co.*, 195 Md. 639, 647, 75 A. 2d 108, 111-12 (1950); *Dominion Marble Co. v. Morrow*, 130 Md. 255, 260, 100 A. 292, 293 (1917); *California Law Revision Comm'n, A Study Relating to Arbitration* G-25 (1960); *M. Domke, The Law and Practice of Commercial Arbitration*, § 2.01 at 10 (1968); Aksen, "Resolving Construction Contract Disputes Through Arbitration," 23 *Arb. J.* 141, 158 (1968); Cushman, "Arbitration and State Law," 23 *Arb. J.* 162 (1968). The arbitrator is not a public official imposed upon the parties by a superior authority, and he is not required to administer justice for a community which transcends the parties. Rather, he is a part of the system of self-government created by and confined to the parties and designed to serve their specialized needs. The arbitrator is usually chosen because of the parties' confidence in his knowledge of the practices of the industry which enables him to employ considerations in fashioning his judgments which may be foreign to the expertise of the courts. The

parties expect that the arbitrator's competence and skill, based on his specialized knowledge and experience, will produce a judgment which is founded not only upon the literal meaning of the words appearing in the contract document itself, but also on their meaning in the context of the practices and customs associated with their use. *Schreiber v. Pac. Coast Fire Ins. Co., supra;* Phillips, "A Lawyer's Approach to Commercial Arbitration," 44 *Yale L. J.* 31, 40-41 (1934); *see* Shulman, "Reason, Contract, and Law in Labor Relations," 68 *Harv. L. Rev.* 999, 1016-18 (1955).

The view of courts toward the arbitration process has been somewhat ambivalent. The common law, recognizing the value of arbitration, permitted parties to agree voluntarily that they would submit to arbitration their existing or possible future disputes. If the agreement to arbitrate was performed by the parties and an arbitrator's award obtained, the award would be enforced by the courts. *Nelley v. Baltimore City,* 224 Md. 1, 8-9, 166 A. 2d 234, 237 (1960); *Mayor and City Council of Baltimore v. Clark,* 128 Md. 291, 309, 97 A. 911, 917 (1916). Indeed, suits to enforce an arbitrator's award were described as "favored" actions, *Parr Construction Co. v. Pomer,* 217 Md. 539, 543, 144 A. 2d 69, 72 (1958); *Dominion Marble Co. v. Morrow, supra; Lewis v. Burgess,* 5 Gill. 129, 131 (1847); *Caton v. McTavish,* 10 G. & J. 192, 216-17 (1838); and the awards of arbitrators would not be set aside by the courts unless the arbitrator was guilty of fraud, misconduct or prejudice, had exceeded his authority, or had made a mistake in law or fact appearing on the face of the award. *Chillum v. Button & Goode,* 242 Md. 509, 517, 219 A. 2d 801, 806 (1966); *Parr Construction Co. v. Pomer, supra,* 217 Md. at 543-44; 144 A. 2d at 72; *Witz v. Tregallas,* 82 Md. 351, 369-70, 33 A. 718, 721-22 (1896); *Roloson v. Carson,* 8 Md. 208, 220-22 (1855). But at common law it was also the general rule that, in the absence of legislative direction to the contrary, an executory agreement for arbitration of the ultimate rights of the parties, such as an agreement to arbitrate all future disputes that might thereafter arise, even though resort to arbitration was specified to be a condition precedent to court action, was not

enforceable and could not constitute a bar to legal or equitable redress in the courts. Courts and commentators reasoned that such a contract, which ousted the jurisdiction of the courts, was against public policy and illegal; or that such an agreement affected only the remedies available to the parties and not their substantive rights; or that such an agreement was revocable at will. *Eisel v. Howell,* 220 Md. 584, 587-588, 155 A. 2d 509, 511 (1959); *Tomlinson v. Dille,* 147 Md. 161, 167, 127 A. 746, 748 (1925). Thus, while suits to enforce an arbitration award were viewed as "favored" actions, executory agreements for arbitration were consigned to an "unfavored" status and suits to compel arbitration or to stay court proceedings pending arbitration could not be brought.[3a]

In Maryland arbitration was governed by the common law rules until 1965, the year in which the Maryland Uniform Arbitration Act, Code (1957), Art. 7, was enacted by the General Assembly.[4] The Uniform Arbitration Act is the

---

**3a.** The generally negative attitude of courts to the arbitration process is exemplified by the case of *Continental Milling & Feed Co. v. Doughnut Corp.,* 186 Md. 669, 675-76, 48 A. 2d 447, 450 (1945), in which the Court of Appeals, in a "favored action" brought to enforce an arbitration award, adopted a narrow test for determining whether the arbitrator had exceeded his authority. There the Court said:

"In a case in New York Chief Judge Cardozo said of arbitration: 'The question is one of intention, to be ascertained by the same tests that are applied to contracts generally. * * * No one is under a duty to resort to these conventional tribunals, however helpful their processes, except to the extent that he has signified his willingness. Our own favor or disfavor of the cause of arbitration is not to count as a factor in the appraisal of the thought of others.' *Marchant v. Mead-Morrison Mfg. Co.,* 252 N. Y. 284, 169 N. E. 386, 391. Sound policy demands that the terms of an arbitration agreement must not be strained to discover power to pass upon matters in dispute, but the terms must be clear and unmistakable to oust the jurisdiction of the Court, for trial by jury cannot be taken away in any case merely by implication.

**4.** 1965 Laws of Maryland, Ch. 231, § 2. Article 7 was repealed and reenacted as §§ 3-201-234 and § 12-303 (c) (9) of the Courts Article. 1973 Laws of Maryland (Ex. Sess.), Ch. 2, § 1, Title 3, Subtitle 2 and Title 12, Subtitle 3. On the whole, the new Arbitration Subtitle either derives its language from Article 7 or uses language from Article 7 with minor changes in style. Revisor's Notes, Subtitle 2, Arbitration and Award, of the Courts Article.

product of the National Conference of Commissioners on Uniform State Laws and was approved in 1956. It has now been adopted by seventeen states, including Maryland.[5]

The Maryland Act provides, in pertinent part:

"§ 1. A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. This article does not apply to an arbitration agreement between employers and employees or between their respective representatives unless it is expressly provided in such agreement that this article shall apply.[6]

"§ 2. (a) *When court to order arbitration; expeditious hearing to determine issue; ordering arbitration or denial of application.* — On application of a party showing an agreement described in § 1, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed expeditiously to the determination of the issues so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.

---

5. The other states are Alaska (1968), Arizona (1962), Arkansas (1969), Illinois (1961), Indiana (1969), Kansas (1973), Maine (1967), Massachusetts (1960), Michigan (1961), Minnesota (1957), Nevada (1969), New Mexico (1971), North Carolina (1973), South Dakota (1971), Texas (1965), and Wyoming (1959). 7 *Uniform Laws Annotated, Uniform Arbitration Act* 7 (1970, Supp. 1974).

6. The Uniform Arbitration Act provides in Section 1 that the Act shall apply to "arbitration agreements between employers and employees or between their respective representatives." Section 1 as enacted in Maryland varies from the text of this portion of the Uniform Arbitration Act.

"(b) *Staying arbitration.* — On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate as described in § 1. Such an issue, when in substantial and bona fide dispute, shall be forthwith tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.

"(c) *Courts in which application may be made.* — If an issue referable to arbitration under the alleged agreement is involved in an action or proceeding pending in a court having jurisdiction to hear applications under subsection (a) of this section, the application shall be made therein. Otherwise and subject to § 17, the application may be made in any court of competent jurisdiction.

"(d) *Stay of proceedings when order of arbitration or application therefor made; when order to include stay.* — Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay.

"(e) *When order not to be refused.* —An order for arbitration shall not be refused or an arbitration proceeding stayed on the ground that the claim in issue lacks merit or bona fides or because a valid basis for the claim sought to be arbitrated has not been shown." [7]

The Uniform Arbitration Act constitutes a radical

---

[7]. The Uniform Arbitration Act substitutes the word "summarily" for the word "expeditiously" in subdivision (a) and inserts "summarily" before "tried" in subdivision (b), second sentence.

departure from the common law. Executory agreements to arbitrate are to be deemed "valid, irrevocable and enforceable," and suits to compel arbitration or to stay the action of a court pending arbitration may now be brought. The prime purpose of these provisions is to discourage litigation and to foster voluntary resolution of disputes in a forum created, controlled and administered according to the parties' agreement to arbitrate. *Maietta v. Greenfield,* 267 Md. 287, 291, 297 A. 2d 244, 246 (1972); *Accord, School District No. 46 v. Del Bianco,* 68 Ill. App. 2d 145, 215 N.E.2d 25, 31 (1966); *Layne-Minnesota Co. v. Regents of Univ. of Minn.,* 266 Minn. 284, 123 N.W.2d 371, 374-75 (1963). Thus, by its enactment, the General Assembly established a policy in favor of the settlement of disputes through the arbitration process and ended the ambivalence of courts under the common law. Not only suits to enforce an arbitrator's award, but also suits to compel arbitration and suits to stay court action pending arbitration, are now to be viewed as "favored" actions.

In accord with the legislative policy in favor of the enforcement of executory agreements to arbitrate, the Act strictly confines the function of the court in suits to compel arbitration to the resolution of a single issue: is there an agreement to arbitrate the subject matter of the dispute. What is sought in such suits is the enforcement of an agreement to arbitrate. Whether one is seeking a court order directing the parties to proceed to arbitration under § 2 (a), resisting a demand for arbitration and seeking an order staying it under § 2 (b), or seeking to stay a court action and obtain an order directing arbitration under § 2 (d), the question is always the same: is there an agreement to arbitrate? [8]

---

8. "In § 2 (a) the issue for determination on a motion to compel arbitration is raised 'if the opposing party denies the existence of the agreement to arbitrate . . . .' Under § 2 (b) 'the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate.' While not so explicitly stated, the intention is plain that the same principles govern under § 2 (d) when an application is made in a pending action for an order staying the action and direct- ing arbitration of an issue involved in the action and 'subject to arbitra-

Where the language of the arbitration provisions is clear and precise, there is no problem for the court. If it is plain that the dispute sought to be arbitrated falls within the scope of the arbitration clause, arbitration should be compelled. If it is apparent, on the other hand, that the issue sought to be arbitrated lies beyond the scope of the arbitration clause, the opposing party should not be compelled to submit to arbitration, since there is no agreement to arbitrate. Where there is a broad arbitration clause, calling for the arbitration of any and all disputes arising out of the contract, all issues are arbitrable [9] unless expressly and specifically excluded. *McCandliss v. Ward W. Ross, Inc.*, 45 Mich. App. 342, 206 N.W.2d 455, 457 (1973); *Michigan Mutual Liability Co. v. Graham*, 44 Mich. App. 406, 205 N.W.2d 289, 291 (1973); *Maryland Casualty Co. v. McGee*, 32 Mich. App. 539, 189 N.W.2d 44, 48 (1971); [10] *Grover-Diamond Ass'n v. American Arbitration Ass'n*, Minn., 211 N.W.2d 787, 790 (1973).

A problem is created for the court when the language of the arbitration provision is unclear as to whether the subject matter of the dispute falls within the scope of the arbitration agreement. In such circumstances the legislative policy in favor of the enforcement of agreements to arbitrate dictates that the question should be left to the decision of the arbitrator. Whether the party seeking arbitration is right or wrong is a question of contract application and interpretation for the arbitrator, not the court, Code (1957), Art. 7, § 2 (e), and the court should not deprive the party seeking arbitration of the arbitrator's skilled judgment by

tion.'" Pirsig, "Some Comments on Arbitration Legislation and the Uniform Act," 10 *Vand. L. Rev.* 685, 694 n. 41 (1957).

The author of the article was the Chairman of the Subcommittee of the National Conference of Commissioners on Uniform State Laws which drafted the Uniform Arbitration Act.

**9.** Even before the adoption of the Uniform Arbitration Act in Maryland, the Court of Appeals in enforcing an arbitrator's award found that a broad arbitration clause clearly required arbitration of the question of fraud in the inducement of the contract. Nelly v. Baltimore City, 224 Md. 1, 10, 166 A. 2d 234, 238 (1960).

**10.** The Uniform Arbitration Act as adopted in Michigan includes a clause which requires arbitration of all issues not made "expressly exempt" from arbitration in the agreement.

attempting to resolve the ambiguity.[11] Under such circumstances arbitration should be compelled.[12]

Here the parties agreed to submit to arbitration "all claims, disputes and other matters in question arising out of or relating to the contract or the breach thereof." Without first seeking arbitration the contractor filed suit to enforce a mechanic's lien for money allegedly due and owing under the agreement. Thereafter the owner made a demand for arbitration of issues concerning the amount of money, if any, that was due and owing. The contractor refused to arbitrate and sought to stay the arbitration proceeding, not because the arbitrability of the substantive issues was questioned but rather because of a dispute as to whether the demand for arbitration had been timely made. Thus the question of substantive arbitrability is not before us. The

---

11. "It should be observed that in all of these categories [where it is either clear or unclear from the language of the arbitration clause whether the dispute sought to be arbitrated falls within it] the court is dealing with the question of whether the dispute shall be submitted to arbitration. Whether the position of the party seeking arbitration with respect to the merits of the claim sought to be arbitrated is a reasonable or permissible one is not the question presented. Nor is it whether the arbitrator's interpretation of the contract in the second and third category [where it is unclear from the language of the arbitration clause whether the dispute sought to be arbitrated falls within it] may be so unreasonable as to go beyond the limits of his authority conferred by the agreement. That cannot be known until the award has been rendered. Here the only question is shall arbitration be directed. An order to that effect will not preclude a later objection to the award that it is so far removed from any reasonable interpretation of the agreement that the arbitrator went beyond his powers." Pirsig, *supra* at 695.

12. The courts of three states which have adopted the Uniform Arbitration Act have recognized that there is a presumption in favor of arbitrability when the court is construing the scope of the arbitration provisions of an agreement. New Pueblo Const. Inc. v. Lake Patagonia Rec. Ass'n, 12 Ariz. App. 13, 467 P. 2d 88, 91 (1970); McCandliss v. Ward W. Ross, Inc., *supra;* Layne-Minnesota Co. v. Regents of Univ. of Minn., *supra* at 376-77; Nordenstrom v. Swedberg, 143 N.W.2d 848, 857 (N.D. 1966) (applying Minnesota law). Illinois has rejected the concept that such a presumption should be applied. Paschen Contractors, Inc. v. John J. Calnan Co., 13 Ill. App. 3d 485, 300 N.E.2d 795, 798 (1973); Silver Cross Hospital v. S.N. Nielsen Co., 8 Ill. App. 3d 1000, 291 N.E.2d 247, 248 (1972); Harrison T. Blades, Inc. v. Jarman Mem. Hosp. Bldg. F., 109 Ill. App. 2d 224, 248 N.E.2d 289, 291 (1969). *Contra,* School District No. 46 v. Del Bianco, *supra* at 30.

In his excellent, extensive and persuasive discussion, Professor Pirsig strongly supports the view that the act intended questions concerning substantive arbitrability to be determined by the courts, but that in performing that function the courts should resolve all doubts in favor of arbitration. Pirsig, *supra* at 692-99.

precise issue which we must resolve is whether the question of compliance with the procedural prerequisite of a timely demand growing out of the arbitrable dispute should be determined by the arbitrator or a court.

Neither Maryland nor any other state which has adopted the Uniform Arbitration Act has decided this issue.[13] However, the identical question has been resolved by the United States Supreme Court in a suit brought by a labor organization to compel arbitration under § 301 of the Labor Management Relations Act.[14] In *John Wiley & Sons, Inc. v. Livingston*, 376 U. S. 543, 84 S. Ct. 909 (1964), the company

---

13. In his brief appellee cites a number of state and federal cases which have held that where parties to a contract that contains an enforceable agreement to arbitrate a dispute proceed to litigate it without objection from either party, there has been a mutual revocation of the arbitration agreement and the party failing to object to the litigation has waived his right to arbitration. None of these cases are apposite to the instant case in which the owner objected to the suit to enforce the mechanic's lien in his initial pleading on the grounds that the subject matter of the dispute was arbitrable.

Appellee further cites a number of cases in which state courts have held that where a contract provided for the exclusive remedy of arbitration and timely demand for arbitration was not made, the right to arbitration had been waived. None of these cases were decided under the Uniform Arbitration Act and in none of them did the parties raise the issue before us of whether the question of compliance with the procedural prerequisites to arbitration should be decided by the arbitrator rather than the court. In each of these cases the court was asked to decide the issue of procedural compliance and no objection was made to having the issue resolved by the court. These cases stand for nothing more than the principle that a party failing to object to litigation concerning an arbitrable issue has waived his right to arbitration. They are all inapposite.

14. In 1947 Congress enacted § 301 of the Labor Management Relations Act [29 U.S.C. § 185 (1970)] which for the first time gave federal courts jurisdiction over "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . without respect to the amount in controversy or without regard to the citizenship of the parties." In the landmark case of Textile Workers Union v. Lincoln Mills of Alabama, 353 U. S. 448, 456-57, 77 S. Ct. 912, 917 (1957), the Supreme Court found that § 301 expresses a federal policy that executory agreements to arbitrate should be enforced by the federal courts. More specifically, the Court said:

"It seems, therefore, clear to us that Congress adopted a policy which placed sanctions behind agreements to arbitrate grievance disputes, by implication rejecting the common law rule, discussed in Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, against enforcement of executory agreements to arbitrate."

The Court then held that the substantive law to be applied in enforcing such agreements in suits under § 301 is "federal law, which the courts must fashion from the policy of our national labor laws."

alleged that it had no duty to arbitrate a dispute found by the court to be arbitrable because the Union had failed to comply with certain of the procedural prerequisites to arbitration required by the governing collective bargaining agreement, including a requirement for a timely filing of the demand for arbitration.[15] There the Court said:

"We think that labor disputes of the kind involved here cannot be broken down so easily into their 'substantive' and 'procedural' aspects. Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it. . . .

"Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration. . . .

It would be a curious rule which required that intertwined issues of 'substance' and 'procedure' growing out of a single dispute and raising the same questions on the same facts had to be carved up between two different forums, one deciding after the other. Neither logic nor considerations of policy compel such a result.

"Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions

---

**15.** The company alleged, among other things, that the Union failed to comply with a provision of the agreement which said:

"Notice of any grievance must be filed with the Employer and with the Union Shop Steward within four (4) weeks after its occurrence or latest existence. The failure by either party to file the grievance within this time limitation shall be construed and be deemed to be an abandonment of the grievance." 376 U. S. at 556 n. 11, 84 S. Ct. at 918 n. 11.

which grow out of the dispute and bear on its final disposition should be left to the arbitrator. Even under a contrary rule, a court could deny arbitration only if it could confidently be said not only that a claim was strictly 'procedural,' and therefore within the purview of the court, but also that it should operate to bar arbitration altogether, and not merely limit or qualify an arbitral award. In view of the policies favoring arbitration and the parties' adoption of arbitration as the preferred means of settling disputes, such cases are likely to be rare indeed. In all other cases, those in which arbitration goes forward, the arbitrator would ordinarily remain free to reconsider the ground covered by the court insofar as it bore on the merits of the dispute, using the flexible approaches familiar to arbitration. Reservation of 'procedural' issues for the courts would thus not only create the difficult task of separating related issues, but would also produce frequent duplication of effort.

"In addition, the opportunities for deliberate delay and the possibility of well-intentioned but no less serious delay created by separation of the 'procedural' and 'substantive' elements of a dispute are clear. While the courts have the task of determining 'substantive arbitrability,' there will be cases in which arbitrability of the subject matter is unquestioned but a dispute arises over the procedures to be followed. In all of such cases, acceptance of Wiley's position would produce the delay attendant upon judicial proceedings preliminary to arbitration. As this case, commenced in January 1962 and not yet committed to arbitration, well illustrates, such delay may entirely eliminate the prospect of a speedy arbitrated settlement of the dispute, to the disadvantage of the parties (who, in addition, will have to bear increased costs) and contrary to the aims of national labor policy.

"No justification for such a generally undesirable result is to be found in a presumed intention of the parties. Refusal to order arbitration of subjects which the parties have not agreed to arbitrate does not entail the fractionating of disputes about subjects which the parties do wish to have submitted. Although a party may resist arbitration once a grievance has arisen, as does Wiley here, we think it best accords with the usual purposes of an arbitration clause and with the policy behind federal labor law to regard procedural disagreements not as separate disputes but as aspects of the dispute which called the grievance procedures into play." 376 U. S. at 556-59, 84 S. Ct. at 918-19.

This rule has been consistently followed and applied by federal courts.[16]

While the principles enunciated in *Wiley* do not flow from an interpretation of the Uniform Arbitration Act, the Congressional policy favoring the enforcement of agreements to arbitrate which led the Supreme Court to its resolution of this issue under § 301 are parallel to the

---

16. *E.g.,* Trailways of New England, Inc. v. Amalgamated Ass'n of Street, E.R. & M.C. Employees, Div. 1318, 343 F. 2d 815, 818 (1st Cir.), *cert. denied,* 382 U. S. 879, 86 S. Ct. 164 (1965); Rochester Tel. Corp. v. CWA, 340 F. 2d 237, 238-39 (2d Cir. 1965); Local 595, Int'l Ass'n of Machinists v. Howe Sound Co., Pa. Elec. Steel Castings Div., 350 F. 2d 508, 511 & n. 8 (3d Cir. 1965); Tobacco Workers Int'l Union, Local 317 v. Lorillard Corporation, 448 F. 2d 949, 953-54 (4th Cir. 1971); Palestine Tel. Co. v. Local 1506, IBEW, 379 F. 2d 234, 240 (5th Cir. 1967); United Steelworkers v. American Int'l Aluminum Corp., 334 F. 2d 147, 150 (5th Cir. 1964), *cert. denied,* 379 U. S. 991, 85 S. Ct. 702 (1965); Local 12934, UMW v. Dow Corning Corp., 459 F. 2d 221, 223-24 (6th Cir. 1972); Western Automatic Machine Screw Co., Div. of Standard Screw Co. v. UAW, 335 F. 2d 103, 106 (6th Cir. 1964); Local 51, IBEW v. Illinois Power Co., 357 F. 2d 916, 919 (7th Cir.), *cert. denied,* 385 U. S. 850, 87 S. Ct. 78 (1966); Local 1401, Retail Clerks Int'l Ass'n v. Woodman's Food Mkt., Inc., 371 F. 2d 199, 201 (7th Cir. 1966); United Steelworkers v. Mesker Bros. Indus., Inc., 457 F. 2d 91, 94 & n. 7 (8th Cir. 1972); Bevington & Basile Wholesalers, Inc. v. Local 46, Int'l Union of United Brewery, F., C., S.D. & D. Workers, 330 F. 2d 202, 204 (8th Cir. 1964); Bealmer v. Texaco, Inc., 427 F. 2d 885, 887 (9th Cir.), *cert. denied,* 400 U. S. 926, 91 S. Ct. 187 (1970); Teamsters Local 70 v. Consol. Freightways Corp. of Del., 335 F. 2d 642, 643-44 (9th Cir. 1964); UAW v. Folding Carrier Corp., 422 F. 2d 47, 49 (10th Cir. 1970). *Accord,* Southwestern New Hampshire Transp. Co. v. Durham, 102 N. H. 169, 152 A. 2d 596, 602 (1959).

policies underlying the Uniform Arbitration Act. Under § 301 the function of the court is strictly confined to ascertaining whether the parties agreed to arbitrate the subject matter of the dispute.[17] When the parties have agreed to submit any and all controversies arising out of the contract to an arbitrator, all issues other than those expressly and specifically excluded must be submitted to arbitration.[18] All doubts concerning the arbitrability of the

17. This rule was first expressed in United Steelworkers of America v. American Manufacturing Co., 363 U. S. 564, 567-68, 80 S. Ct. 1343, 1346 (1960), in which the Supreme Court said:

"The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for."

*Accord, e.g.,* United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U. S. 574, 582, 80 S. Ct. 1347, 1353 (1960); Trailways of New England, Inc. v. Amalgamated Ass'n of Street, E.R. & M.C. Employees, Div. 1318, *supra* at 818-19; Local 12298, Dis. 50, UMW v. Bridgeport Gas Co. 328 F. 2d 381, 383 (2d Cir. 1964); RCA v. Ass'n of Professional Eng'r Personnel, 291 F. 2d 105, 109 (3d Cir. 1961); Ass'n of Westinghouse Salaried Employees v. Westinghouse Elec. Corp., 283 F. 2d 93, 95 (3d Cir. 1960); United Textile Workers v. Newberry Mills, Inc., 315 F. 2d 217, 218 (4th Cir.), *cert. denied,* 375 U. S. 818, 84 S. Ct. 54 (1963); Jacksonville Newspaper Printing Pressman Union, Local 57 v. Florida Publishing Com., 468 F. 2d 824, 826 (5th Cir. 1972), *cert. denied,* 411 U. S. 906, 93 S. Ct. 1531 (1973); Lodge No. 12, Dist. No. 37, Int'l Ass'n of Machinists v. Cameron Iron Works, 292 F. 2d 112, 117 (5th Cir.), *cert. denied,* 368 U. S. 926, 82 S. Ct. 361 (1961); Local 6, Bricklayers, M. & P. v. Boyd G. Heminger, Inc., 483 F. 2d 129, 131 (6th Cir. 1973); Smith v. Union Carbide Corp., 350 F. 2d 258, 260-61 (6th Cir. 1965); Nepco Unit of Local 95, Office Employees Int'l Union v. Nekoosa-Edwards Paper Co., 287 F. 2d 452, 454 (7th Cir. 1961); Local 4, IBEW v. Radio Thirteen-Eighty, Inc., 469 F. 2d 610, 614 (8th Cir. 1972).

18. This rule was first expressed in United Steelworkers of America v. Warrior & Gulf Navigation Co., *supra,* 363 U. S. at 581, 584-85, 80 S. Ct. at 1352, 1354, where the Supreme Court said:

"Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement. . . .

. . . .

"In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad. Since any attempt by a

subject matter of the dispute are to be resolved in favor of arbitration.[19] Once it is determined that an arbitrable issue

> court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator."

*Accord, e.g.*, Atkinson v. Sinclair Refining Co., 370 U. S. 238, 241-43, 82 S. Ct. 1318, 1320-22 (1962); Proctor & Gamble Independent Union of Port Ivory v. Proctor & Gamble Mfg. Co., 298 F. 2d 644, 645-46 (2d Cir. 1962); Avco Corp. v. Local 787, UAW, 459 F. 2d 968, 973 (3d Cir. 1972); RCA v. Ass'n of Professional Eng'r Personnel, *supra* at 109-10; United Textile Workers v. Newberry Mills, Inc., *supra* at 219; Sam Kane Packing Co. v. Amalgamated Meat Cutters & B.W., 477 F. 2d 1128, 1134-35 (5th Cir.), *cert. denied*, 414 U.S. 1001, 94 S. Ct. 355 (1973); Lodge No. 12, Dist. No. 37, Int'l Ass'n of Machinists v. Cameron Iron Works, *supra* at 118-19; Jefferson City Cabinet Co. v. IUE, 313 F. 2d 231, 236 (6th Cir.), *cert. denied*, 373 U.S. 936, 83 S. Ct. 1539 (1963); Local 702, IBEW v. Central Ill. Public Service Co., 324 F. 2d 920, 922-23 (7th Cir. 1963); Local 4, IBEW v. Radio Thirteen-Eighty, Inc., *supra* at 614; Int'l Ass'n of Machinists v. Howmet Corp., 466 F. 2d 1249, 1252 (9th Cir. 1972); Desert Coca Cola Bottling Co. v. General Sales Drivers, D.D. & H. Local 14, 335 F. 2d 198, 201-02 (9th Cir. 1964); UAW v. Cardwell Mfg. Co., 304 F. 2d 801, 802-03 (10th Cir. 1962).

**19.** This rule was first expressed in United Steelworkers of America v. Warrior & Gulf Navigation Co., *supra*, 363 U. S. at 582-83, 80 S. Ct. at 1353, where the Supreme Court, after explicating the benefits of arbitration in general and the special competence of the arbitrator in particular, said:

> "The Congress, however, has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (Footnote omitted.)

*Accord, e.g.*, Peerless Pressed Metal Corp. v. IUE, 451 F. 2d 19, 20 (1st Cir. 1972); Strauss v. Silvercup Bakers, Inc., 353 F. 2d 555, 557-59 (2d Cir. 1965); Proctor & Gamble Independent Union of Port Ivory v. Proctor & Gamble Mfg. Co., *supra* at 645-46; RCA v. Ass'n of Professional Eng'r Personnel, *supra* at 110; H.K. Porter Co. v. Local 37, United Steel, 400 F. 2d 691, 694-95 (4th Cir. 1968); United Textile Workers v. Newberry Mills, Inc., *supra* at 218-19; Sam Kane Packing Co. v. Amalgamated Meat Cutters & B.W., *supra* at 1134; CWA v. Southwestern Bell Tel. Co., 415 F. 2d 35, 39 (5th Cir. 1969); Int'l Ass'n of Machinists v. Hayes Corp., 296 F. 2d 238, 242-43 (5th Cir. 1961); Hotel & Restaurant E. & B. Int'l Union v. Playboy Clubs Int'l, Inc.,

exists the parties are not to be deprived by the courts of the benefits of arbitration for which they bargained — speed in the resolution of the dispute and the employment of the specialized knowledge and competence of the arbitrator. *Wiley v. Livingston, supra,* 376 U. S. at 557-58, 84 S. Ct. 918-19.

We are convinced that the rule enunciated in the *Wiley* case, applicable to arbitration under collective bargaining agreements in suits brought under § 301 of the Labor Management Relations Act, is sound and totally consistent with the intent and purposes of the Uniform Arbitration Act. The rule promotes the benefits of arbitration. It removes the "difficult task of separating related issues" from the courts and avoids duplication of effort and unjustifiable delay. We believe that the application of *Wiley* to commercial arbitration would properly effectuate the legislative policy in favor of the enforcement of executory agreements to arbitrate which the Uniform Arbitration Act expresses.[20]

---

454 F. 2d 703, 704 (6th Cir. 1972); Am. Radiator & Standard Sanitary Corp. v. Local 7, Int'l Bhd. Operative Potters, 358 F. 2d 455, 458 (6th Cir. 1966); Local 702, IBEW v. Central Ill. Public Service Co., *supra* at 923; Montana-Dakota Util. Co. v. NLRB, 455 F. 2d 1088, 1092 (8th Cir. 1972); Local 1327, Int'l Ass'n of Machinists v. Fraser & Johnston Co., 454 F. 2d 88, 92 (9th Cir. 1971), *cert. denied,* 406 U. S. 920, 92 S. Ct. 1775 (1972); Independent Soap Workers v. Proctor & Gamble Mfg. Co., 314 F. 2d 38, 43 (9th Cir.), *cert. denied,* 374 U. S. 807, 83 S. Ct. 1696 (1963); Bhd. Locomotive F. & E., Lodge 844 v. Kennecott Cooper Corp., 338 F. 2d 224, 226 (10th Cir. 1964).

20. Authorities, courts of other states, and federal courts have recognized the propriety of applying the federal law relating to arbitration under collective bargaining agreements under § 301 to commercial arbitration. *E.g.,* Federal Commerce & Navigation Co. v. Kanematsu-Gosho Ltd., 457 F. 2d 387, 390 (2d Cir. 1972); Hussey Metal Division v. Lectomelt Furnace Division, 471 F. 2d 556, 557-58 (3d Cir. 1972); Pioneer Indus. v. Gevyn Constr. Corp., 458 F. 2d 582, 584 (1st Cir. 1972); Swift Indus., Inc. v. Botany Indus., Inc., 466 F. 2d 1125, 1129-31 (3d Cir. 1972); World Brilliance Corp. v. Bethlehem Steel Corp., 342 F. 2d 362, 365 (2d Cir. 1965); Lundgren v. Freeman, 307 F. 2d 104, 109-10 (9th Cir. 1962); Lummus Co. v. Commonwealth Oil Refining Co., 297 F. 2d 80 (2d Cir. 1961), *cert. denied,* 368 U. S. 986, 82 S. Ct. 601 (1962); San Martine Compania de Navigacion, S.A. v. Saguenay Terminals Ltd., 293 F. 2d 796, 801 & n. 5 (9th Cir. 1961); Lowry & Co. v. S. S. Le Moyne D'Iberville, 253 F. Supp. 396, 399 (S.D.N.Y. 1966), *appeal dismissed,* 372 F. 2d 123 (2d Cir. 1967); New Pueblo Const., Inc. v. Lake Patagonia Rec. Ass'n, 12 Ariz. App. 13, 467 P. 2d 88, 91 (1970); Northcutt Lumber Co. v. Goldeen's Peninsula, Inc., 30 Cal. App. 3d 440, 443, 106 Cal. Rptr. 353, 355 (1st Dis. 1973); Felner v. Meritplan Insurance Co., 6

The application of *Wiley* to the instant case produces a clear result. Here the substantive arbitrability of the dispute is unquestioned and the only area of conflict relates to compliance with the procedural prerequisite of timeliness of the demand for arbitration. We can find no justification for the fractionating of a dispute which the parties agree to submit to arbitration. Accordingly we now hold that under an arbitration clause such as is present in this case, when parties are obligated to submit the subject matter of their dispute to arbitration, "procedural" questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.[21]

The trial court erred in ordering a stay of arbitration. Accordingly, we shall reverse and remand for the entry of an order to compel arbitration and to stay further proceedings in the Circuit Court for Montgomery County.

> *Order reversed.*
> *Case remanded for further proceedings in accordance with this opinion.*
> *Costs to be paid by appellee.*

---

Cal. App. 3d 540, 546, 86 Cal. Rptr. 178, 182 (2d Dis. 1970); Swift-Chaplin Prod., Inc. v. Love, 219 Cal. App. 2d 110, 32 Cal. Rptr. 758, 760-61 (2d Dis. 1963); L'Manian v. American Motorists Ins. Co., 4 Conn. Cir. 524, 236 A. 2d 349, 352 (1967); *M. Domke, The Law and Practice of Commercial Arbitration,* § 1.02 at 4-5 (1968). *See also California Law Revision Comm'n, A Study Relating to Arbitration* at G-32-G-34 (1960).

21. In view of this holding we do not reach the merits of the contractor's contentions that the owner did not comply with the procedural requirements of the agreement.