477 A.2d 279

**WICOMICO COUNTY EDUCATION ASSOCIATION, INC.,
et al.**

v.

**BOARD OF EDUCATION OF WICOMICO COUNTY.**

**No. 205, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

July 12, 1984.

James R. Whattam and Walter S. Levin, Baltimore, with whom were Weinberg & Green, Baltimore, on the brief, for appellants.

Fulton P. Jeffers, Salisbury, with whom was Melvin J. Caldwell, Jr., Ellicott City, on the brief, for appellee.

Argued before GILBERT, C.J., and ADKINS and BLOOM, JJ.

GILBERT, Chief Judge.

Arbitration is to the law what the shortcut is to the traveller, the most direct route to the objective. Yet, the arbitration, as well as the shortcut, may turn out not to be the cheapest way. Because of the economy of arbitration, not all of the judicial safeguards are automatically built into that system. This is one of those cases where the economy has proven costly.

The record before us reveals that Earl A. Reddish is a certified professional teacher and a member of the Wicomico County Education Association, Inc. (WCEA). He is employed by the Board of Education of Wicomico County, but he is not a member of the Wicomico Senior High School faculty. WCEA is the collective bargaining agent for teachers employed by the Board of Education for Wicomico County (Board). On December 3, 1982, Reddish and WCEA initiated a grievance under the collective bargaining agreement.

Reddish and WCEA asserted that Reddish had applied unsuccessfully to the Board for the position of head coach of the Wicomico Senior High School baseball team for the 1982–1983 school year. The Board, notwithstanding a provision in the collective bargaining agreement that a teacher shall not be given a third coaching assignment if an "acceptable alternative" is available, nevertheless appointed a Mr. Waller to a third coaching position.

Pursuant to the collective bargaining agreement, an arbitrator was selected to decide the validity *vel non* of the grievance. After hearing evidence, the arbitrator determined that Reddish and a Mr. Webster were qualified applicants for the coaching position, and that the Board's action in naming Mr. Waller to a third coaching position

violated the collective bargaining agreement. The arbitrator directed that the Board give "full and fair consideration to all" qualified applicants. Since the arbitrator found that both Webster and Reddish were qualified for the position, he declined to install Reddish as the coach of the team.

Unhappy with winning but half a loaf, Reddish and WCEA petitioned the Circuit Court for Wicomico County to vacate the arbitration award in part or, alternatively, to correct or modify, in part, the arbitrator's award. In the petition Reddish and WCEA averred, among other things:

> "That neither the Board nor WCEA presented any evidence that anyone other than Grievant [Reddish] applied for the position of head varsity baseball coach at Wicomico Senior High School for the 1982–83 school year. The evidence before the Arbitrator was that the Grievant was the only applicant for said position."

Additionally, the petitioners suggested that the arbitrator would have granted to Reddish retroactive relief, in the form of installing him as coach as well as awarding him back pay, had the arbitrator not erroneously concluded that Webster had also applied for the position.

The petitioners asked that the part of the arbitration award concerned with there being more than one applicant be modified or vacated. The matter was put to the court with the request: 1) that it vacate a portion of the award and remand to the arbitrator "for a rehearing and redetermination of the remedy to be granted"; or 2) that it modify or correct the arbitrator's factual finding and direct the Board to appoint Reddish as coach.

The Board answered by denying that there was no testimony that anyone other than Reddish had applied for the job. The denial strongly implied that Webster was an applicant for the coaching position. Furthermore, the Board noted that no transcript was made of the testimony heard before the arbitrator. In addition, the Board by a separate writing moved to dismiss the Reddish and WCEA petition.

When the matter was heard on the motion, counsel for Reddish and WCEA urged that the motion should be treated as a demurrer. The court agreed and sustained the demurrer without leave to amend.

We think the motion should not have been treated as a demurrer but rather as a motion for summary judgment. *See Southern Md. Hosp. v. Edw. M. Crough, Inc.,* 48 Md.App. 401, 402, 427 A.2d 1051 (1981); *O–S Corp. v. Samuel A. Kroll, Inc.,* 29 Md.App. 406, 410, 348 A.2d 870 (1975). Although it is true that there were factual disputes concerning the happenings before the arbitrator, there is no dispute to the fact that a transcript was lacking. Thus, absent a *de novo* trial, the court was unable to resolve the factual disputes upon which the petition was based.

The appellants urge us to hold that in the particular circumstances of this case the court should have taken testimony relative to whether the evidence before the arbitrator did in fact establish that there was more than one applicant. What Reddish and WCEA actually desire is a partial hearing *de novo*.

Md.Cts. & Jud.Proc.Code Ann. § 3–220(b) provides:

"The arbitrator may, and on application of a party shall, order that part or all of the proceedings be transcribed. The record made from the transcript shall be available to other sides for purpose of appeal or otherwise."

Patently, Reddish and WCEA could have had a transcript made of the arbitration proceeding. Because they voluntarily did not order a transcript of that hearing, they now seek to have the court rehear that which the arbitrator heard. Their failure to order the transcript may not be converted into their advantage, i.e., a *de novo* hearing where the judge hears anew the testimony and assesses his evaluation of the credibility of the witnesses rather than relying upon that of the arbitrator. *Cf. Langrall, Muir & Noppinger v. Gladding,* 282 Md. 397, 384 A.2d 737 (1978). Were the law otherwise, the arbitration would be but a first airing of the

evidence, a prelude to trial, instead of the termination of the evidentiary phase of the dispute.

Reddish and WCEA on oral argument of the matter *sub judice*, explained that a transcript was not ordered because of the expense. That savings is in the instant case a false economy. In today's electronically operated world, the cost of taping an arbitration proceeding is most certainly not prohibitive. If a tape is made of the proceeding, a transcript when required may be subsequently prepared. Had a tape been made in the instant case, the problem dogging Reddish and WCEA would not have arisen.

Even if the arbitrator erred in his factfinding, the circumstances under which an arbitration award may be set aside are limited. Courts Art. § 3–224(b) provides:

"The court shall vacate an award if:

(1) An award was procured by corruption, fraud, or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement, refused to hear evidence material to the controversy, or otherwise so conducted the hearing, contrary to the provisions of § 3–213, as to prejudice substantially the rights of a party; or

(5) There was no arbitration agreement as described in § 3–206, the issue was not adversely determined in proceedings under § 3–208, and the party did not participate in the arbitration hearing without raising the objection."

Modification or correction of an arbitrator's award is permitted only when:

"(1) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing, or property referred to in the award;

(2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

(3) The award is imperfect in a matter of form, not affecting the merits of the controversy." Courts Art. § 3–223(b).

The averments in the Reddish and WCEA petition were insufficient to invoke the court's power to modify the arbitration award. Section 3–223(b) does not sanction a modification merely because there is a bald allegation that it was based on a factual error not apparent on the face of the award. *See O–S Corp. v. Samuel A. Kroll, Inc., supra,* 29 Md.App. at 408–409, 348 A.2d 870; *Bel Pre Medical Center v. Frederick Contractors, Inc.,* 21 Md.App. 307, 320 A.2d 558 (1974), *rev'd on other grounds,* 274 Md. 307, 334 A.2d 526 (1975).

In *O–S Corp. v. Samuel A. Kroll, Inc., supra,* we noted that Courts Art. § 3–224 is essentially a codification of the common law as to when a court may vacate an arbitration award. At common law an arbitrator's award was not vacated "unless the arbitrator was guilty of fraud, misconduct or prejudice, had exceeded his authority, or had made a mistake in law or fact appearing on the face of the award." *Bel Pre Medical Center v. Frederick Contractors, Inc.,* 21 Md.App. at 316, 320 A.2d 558.

Nothing in the Maryland Uniform Arbitration Act, codified in Courts Art. § 3–201 through 3–234, authorizes the circuit court to conduct either a partial or a complete hearing *de novo.* Moreover, such a proceeding would expand that court's authority to review arbitration awards well beyond the present boundaries set by the legislature.

All of this discussion leads us back to where we began. When there is no transcript of the hearing before the arbitrator, the circuit court is totally without a means of resolving factual disputes properly before it.

We make clear that we are not holding that a transcript of an arbitration proceeding is required before there can be judicial review. When, however, the court is called upon to determine whether there was or was not a factual dispute before the arbitrator, a transcript of the arbitration proceeding may be a necessity.

How this Court would be expected to determine without a transcript that a trial judge was clearly erroneous in his factfinding, Md.Rule 1086, absolutely escapes us. How a trial court can decide without the advantage of a transcript of an arbitration proceeding that the arbitrator erred in his factfinding is equally elusive.

It follows that Judge Truitt did not err in entering judgment for the Board, even though he may have employed the wrong mechanism to so do.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.